IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Ridge Corporation, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Kirk National Lease Co., et al., )<br>)<br>Defendants. )<br>) | Case No. 2:23-CV-03012<br><br>Judge Graham<br><br>Magistrate Judge Jolson |

**Plaintiff Ridge Corporation's Motion For
Temporary Restraining Order and Preliminary Injunction**

Pursuant to Fed. R. Civ. P. 65 and S.D. Ohio Civ. R. 65.1, Plaintiff Ridge Corporation ("**Ridge**") moves the Court for a temporary restraining order and preliminary injunction, enjoining Defendants Kirk National Lease Co. ("**KNL**"), Truck & Trailer Parts Solutions Inc. ("**TTPS**"), Transglobal, Inc. ("**Transglobal**"), and Altum LLC ("**Altum**") (collectively "**Defendants**") from:

1. Continuing to manufacture, advertise for sale, sell, or further contract to sell the "**Infringing Door**," as defined in the Verified Complaint or any other infringing door, in violation of United States Patent No. 9,151,084 ("**Cold Chain Patent**");

2. Inducing any other person or entity to manufacture, advertise for sale, or sell the Infringing Door or any other door that infringes the Cold Chain Patent;

3. Contributing to the manufacture, advertisement for sale, or selling of the Infringing Door or any other door that infringes the Cold Chain Patent;

4. Tortiously interfering with Ridge's business relationships by making false claims related to the Infringing Door to Ridge's customers or business partners, including barring Defendants from falsely asserting that any aspect of the Infringing Door is "patented" by Defendants.

A memorandum in support is attached.

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated: September 20, 2023 | _____ <br> Christopher W. Tackett (0087776) <br> Graycen M. Wood (0102160) <br> John P. Miller (0097161) <br> **Bailey Cavalieri LLC** <br> 10 West Broad Street, Suite 2100 <br> Columbus, Ohio 43215 <br> Phone: 614.229.3286 <br> Fax:    614.221.0479 <br> Email:   ctackett@baileycav.com <br>             gwood@baileycav.com <br>             jmiller@baileycav.com <br> <br> *Counsel for Plaintiff Ridge Corporation* |

**MEMORANDUM IN SUPPORT**

**I.     Introduction**

As set forth in the Verified Complaint and its 17 Exhibits that are incorporated into this Motion by reference, Defendants are collectively working together to produce, market, and sell a single-panel roll-up door that blatantly infringe Ridge's patent rights, which Ridge holds through its purchase of an exclusive license to the "Cold Chain Patent." Defendants KNL and TTPS filed a patent application for their competing product in February, which has not been granted and is trumped by longstanding Cold Chain Patent granted in 2015. Yet, KNL and TTPS are falsely advertising their roll-up door as being patented on the TTPS website, which is a point-blank instance of "false marking," subjecting KNL and TTPS to liability. Further, the TTPS website also boasts that their Infringing Door that they falsely market as "patented" is already being tested by customers in this narrow market space, stating that they have "Dozens of Doors in the Pilot Phase with Numerous Fleets." (*See* Verified Compl., p. 14 and Ex. 8). When confronted with plain evidence of their infringement (*see* Verified Complaint Exhibits 1-17), Defendants have willfully pushed forward with their wrongdoing and deflected without ever showing in any way that their product does not infringe. Because they cannot.

Then two weeks ago to this day, Defendants went even a step farther and sent a misleading letter (with critical omissions) to Ridge's business partner on the Ridge Door to suggest that Ridge's business partner could face legal liability and damages for helping Ridge to create its door. (*See* id., at Ex. 14, the Barnes Letter). The Barnes letter made it clear that Defendants will not cease and desist and will continue to act in willful ignorance of the law unless and until they are stopped by a Court Order. Absent injunctive relief, including a

1

temporary restraining order, Defendants will continue to exploit Ridge's hard-earned and protected technology.

II. **Factual Background**

On October 5, 2015, the United States Patent and Trademark Office (USPTO) issued the Cold Chain Patent to Cold Chain, LLC ("**Cold Chain**"), which provides patent protection for a single panel roll-up truck door. (Verified Compl. ¶¶17-18, Exhibit 1). Through Ridge's February 15, 2023 License Agreement with Cold Chain, Ridge became the exclusive licensee of the Cold Chain Patent ("**License Agreement**"). (*Id.* at ¶18, Exhibit 2). On May 1, 2023, the License Agreement was restated for business reasons between Ridge and Cold Chain, and that restatement is included to simply confirm the full extent of the exclusive license to Ridge. (*Id.* at ¶19, Exhibit 3). Ridge has invested substantial time and economic resources into preparing for large-scale manufacture, sale, and distribution of its single panel roll-up overhead door based on the Cold Chain Patent. (*Id.* at ¶23).

In October 2018, KNL approached Ridge about creating panels for a potential roll-up door application. (*Id.* at ¶25). At the time, Ridge had already developed the "living-hinge" technology necessary for the implementation of a single panel roll-up door application. (*Id.* at ¶26). Ridge engineered and produced drawings for a single panel roll-up door that it provided to KNL while they were pursuing a joint development venture together. (*Id.* at ¶28). KNL and Ridge did not proceed with the joint venture based on disagreements regarding business terms and commercial implementation. (*Id.* at ¶29). That said, Ridge had developed the living-hinge concept as part of its long-term interest in the market space. Due to that interest Ridge, continued to investigate the space and learned of the Cold Chain Patent. Then, in order to be

2

able to legally operate and bring its business goal into reality, Ridge invested substantial money and time into securing an exclusive license for the Cold Chain Patent.

On February 19, 2022, KNL filed U.S. Patent Application 17/676,144 for a "Single Panel Roll-Up Door ("**'144 Patent Application**"). (*Id.* at ¶32, Exhibit 4). Importantly, the Cold Chain Patent long precedes the '144 Patent Application and the Cold Chain Patent gives Ridge superior and exclusive rights to produce its single panel roll-up commercial truck door. Further, despite Ridge's overwhelming contribution to development of the single panel roll-up door back when KNL and Ridge had been working together, the '144 Patent Application failed to list Ridge as a joint inventor. (*Id.* at ¶¶33-34, Exhibit 4). This fact is not relevant for purposes of analyzing that the KNL/TTPS/Altum/Transglobal Door infringes on the Cold Chain patent, however, it does show that the '144 Patent Application is false and defective on its face.

On June 6, 2023, Ridge sent KNL a letter requesting that KNL correct the '144 Patent Application. (*Id.* at ¶35, Exhibit 5). On June 30, 2023, KNL responded, without explanation, and denied Ridge contributed to the subject matter of the '144 Patent Application. (*Id.* at ¶36, Exhibit 6). On July 2, 2023, Ridge sent an email to KNL attaching plain evidence of Ridge's joint inventorship of the invention claimed in the '144 Patent Application's subject invention. KNL has failed to show any support for its contention that Ridge should not be listed as a joint inventor and has never corrected the '144 Patent Application. (*Id.* at ¶37, Exhibit 7).

Evidently, once Ridge and KNL ceased their working relationship, KNL joined forces with Altum in a shared venture against Ridge. (*Id.* at ¶42). As laid out in the Verified Complaint, evidence suggests that Altum induced the infringement at issue. Altum is composed of three former Ridge employees who left Ridge and then started a directly

3

competing company focused in the same niche areas as Ridge, and Altum repeatedly uses Ridge's protected intellectual property in many of the products that Altum offers, which it then offers for sale to many Ridge customers. (*Id.* at ¶41). Instead of working with Ridge and purchasing a sub-license to legally operate, KNL and TTPS are infringing the Cold Chain patent by working with Altum to create the panels necessary for the roll-up door, receiving direction from Altum on how to create the Infringing Door out of the panels, and then working with Transglobal to make those modifications to the panels and produce the Infringing Doors. (*Id.* at ¶46).

TTPS and KNL are affiliated companies with overlapping ownership and TTPS appears to be KNL's public-facing sales arm that markets and sells the roll-up doors, which its website falsely advertises as being a "patented single panel roll door." (*Id*. at ¶¶55-57, Exhibit 8). This representation is untrue as the '144 Patent Application has not been approved. (*Id.* at ¶58), which is a point-blank instance of false marking that subjects TTPS and KNL to liability under patent law.

On June 6, 2023 Ridge sent KNL and TTPS a cease-and-desist letter informing them that the Infringing Door infringed on the claims in the Cold Chain Patent and requesting that KNL and TTPS cease marketing and selling the Infringing Door. (*Id.* at ¶66, Exhibit 9). Nearly a full month later, on July 5, 2023, KNL and TTPS answered, through counsel, only that they "would respond later." (*Id.* at ¶67, Exhibit 10). Ridge replied asking that KNL and TTPS confirm they would cease and desist, but there was no response. (*Id.* at ¶68). It was not until August 1, 2023, that KNL responded and denied the infringement allegations with little explanation and stated that the companies were not interested in any commercial solutions. (*Id.* at ¶69). On June 9, 2023, Ridge also sent a cease-and-desist letter to Altum requesting that

Altum stop its infringement of the Cold Chain Patent. (*Id.* at ¶70). Altum also waited over a month to respond, and then simply denied any infringement was occurring. (*Id.* at ¶71). Not only did Defendants not heed Ridge's demands that they stop infringing, but on September 6, 2023, KNL sent a letter Whiting Door Corporation ("**Whiting Door**") threatening potential royalty damages for sales of Ridge's single panel roll-up door ("**Barnes Letter**"). (*Id.* at ¶78, Exhibit 14).

As a result of Defendants' flippant and defiant attitude towards Ridge's intellectual property rights, Ridge had no choice but to file the Verified Complaint. It includes a direct patent infringement claim against KNL, TTPS, and Transglobal ("**Direct Infringement Claim**"), patent inducement ("**Patent Inducement Claim**") and contributory infringement claims ("**Contributory Infringement Claim**") against Altum, a tortious interference with business relationships claim against KNL and Altum ("**Tortious Interference Claim**"), and a false marking claim against TTPS and KNL ("**False Marking Claim**").

Attached to the Verified Complaint as Exhibit 16 is the "Claim Chart." It walks through every feature of claims in the Cold Chain Patent and shows precisely how the Infringing Door infringes upon the Cold Chain Patent.

### III. Injunction Standard

In ruling on an injunction a court must consider four factors:

1. The moving party's reasonable likelihood of success on the merits;
2. Whether the moving party will suffer irreparable harm if a preliminary injunction is not granted;
3. Whether the balance of hardships tips in favor of the moving party; and
4. Whether the public interest favors the grant of a preliminary injunction.

*Young v. Lumenis, Inc.*, 301 F. Supp. 2d 765, 768 (S.D. Ohio 2004) (citing *Anton/Bauer, Inc. v. PAG, Ltd.,* 329 F.3d 1343, 1348 (Fed. Cir. 2003)) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350 (Fed. Cir. 2001)).

"In order to obtain a preliminary injunction in a patent case, the movant must establish at the very least both of the first two factors, i.e., a likelihood of success on the merits and irreparable harm." *Young*, 301 F. Supp. 2d at 768 (citing *Anton/Bauer*, 329 F.3d at 1348) (citing *Amazon.com*, 239 F.3d at 1350).

Further, 35 U.S.C. § 283 specifically provides for and contemplates the need for injunctive relief in patent infringement cases, stating:

> The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.

This is precisely because of the extreme difficulty of restoring the position of a patent holder who has a competitor threatening to imminent steal market share by releasing infringing products into the national stream of commerce. Defendants here are on the verge of doing just that and must be enjoined for the reasons further detailed below.

IV. **Law and Argument**

    A. **A Temporary Restraining Order is Necessary to Maintain the Status Quo and Prevent Defendants from Causing Irreparable Harm to Ridge, which is the Rightful Patent Holder**.

"The purpose of a temporary restraining order is to preserve the status quo so that a reasoned resolution of a dispute may be had." *QFS Transp., LLC v. Huguely*, No. 1:21-cv-00769, 2022 U.S. Dist. LEXIS 22931, at *9 (S.D. Ohio Feb. 9, 2022). It is meant to prevent irreparable harm until a preliminary injunction hearing can be held. *Sarnova HC, LLC v. Reetz*, No. 2:21-cv-0601, 2021 U.S. Dist. LEXIS 65527, at *7 (S.D. Ohio Apr. 5, 2021) (citing *Dow*

6

*Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979)). With the four injunction factors above, a temporary restraining order emphasizes immediacy. *Rover Pipeline Llc v. Kanzigg*, No. 2:17-cv-105, 2019 U.S. Dist. LEXIS 50398, at *16 (S.D. Ohio Mar. 26, 2019).

Ridge has sent Defendants at least five letters and emails officially seeking to enforce its rights related to the Cold Chain Patent. Defendants have either failed to respond, deflected, or made unexplained denials of wrongdoing. Worse, KNL and TTPS have actively sought to spread misinformation related to Ridge and the Cold Chain Patent by sending the Barnes Letter to Whiting Door. Further, Defendants are lying to customers in this limited market and telling them that the Infringing Door is patented when it is not—which suggests to customers that they could get into trouble if they purchase anyone else's single panel roll-up door. Defendants are actively conspiring together to damage Ridge. Defendants will not cease causing irreparable harm unless ordered to do so by this Court. They will use any delay before a preliminary injunction to further entrench themselves in wrongful activity. This Court should not allow Defendants such an advantage.

**B.** **Ridge is substantially likely to succeed on the merits of its patent infringement claims**.

"While a plaintiff is not required to prove her entire case at this stage, 'to establish success on the merits, a plaintiff must show "more than a mere possibility of success."'" *A.F. v. Ass'n of Am. Med. Colls.*, No. 2:23-cv-1241, 2023 U.S. Dist. LEXIS 106947, at *21 (S.D. Ohio June 20, 2023) (quoting *Black v. Cincinnati Fin. Corp.*, No. 1:11-cv-2010, 2011 U.S. Dist. LEXIS 46852, at *6 (S.D. Ohio May 2, 2011)). Ridge can satisfy this burden on each of its claims.

7

### 1. *Ridge is likely to succeed on its Direct Infringement claim.*

Direct patent infringement is governed by 35 U.S.C. § 271(a), which says: "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." Direct infringement is a "strict-liability offense," therefore the alleged infringer's mental state is irrelevant. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 135 S. Ct. 1920, 191 L. Ed. 2d 883 (2015). To prove direct infringement a plaintiff must show the defendant without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent. *Bettcher Indus. v. Bunzl USA, Inc.*, 692 F. Supp. 2d 805, 808 (N.D. Ohio 2010).

To establish a likelihood of success on the merits in a patent case, Ridge must simply show the Cold Chain Patent is valid and Defendants infringed the Cold Chain Patent. *Young*, 301 F. Supp. at 768. Ridge's Verified Complaint and Exhibits satisfy both burdens.

#### a) The Cold Chain Patent is valid.

Under 35 U.S.C. §282, a patent is presumed to be valid, and "this presumption can only be overcome at trial by clear and convincing evidence to the contrary." *Young*, 301 F. Supp. 2d at 769. The presumption is derived from the premise that the qualified patent examiner has properly done his job. *See Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000). The patentee "carries the burden of establishing a likelihood of success on the validity issue and thus must show that [the infringer] will not likely prove that the patent is invalid." *Canon Computer Sys. v. Nu-Kote, Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

There is no question regarding the validity of the Cold Chain Patent. The USPTO duly issued it, and it is entitled to a presumption of validity under controlling law. In response to

8

Ridge's various attempts to amicably converse with Defendants regarding the Cold Chain Patent, they have not asserted any claim that the Cold Chain Patent is in any way invalid. Defendants will be unable to assert any argument for a lack of validity.

> b) *Defendants infringed the Cold Chain Patent.*

Determining whether a product infringes a patent is a two-step process: "First, the Court must determine the meaning and scope of the patent claims asserted to be infringed. Then, the trier of fact must compare the properly construed claims to the device accused of infringing." *Ocean Innovations v. Quarterberth, Inc.*, No. 1:03CV0913, 2009 U.S. Dist. LEXIS 150344, at *12-13 (N.D. Ohio Sep. 30, 2009) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir. 1995), *aff'd* 517 U.S. 370 (1996). "To literally infringe, the accused device must contain every limitation of the asserted claim." *Ocean Innovations,* 2009 U.S. Dist. LEXIS 150344, at *12-13 (citing *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed.Cir. 1991)). "When an allegedly infringing product includes every limitation of the patent claim, literal infringement is made out, and that is the end of the inquiry. The presence of additional elements in the accused device is irrelevant if all of the claimed elements are present in it." *Ocean Innovations*, 2009 U.S. Dist. LEXIS 150344, at *13 (citing *GMI Holdings, Inc. v. Stanley Door Systems, Inc.*, 943 F.Supp. 1420, 1426 (N.D.Ohio 1996)).

The Claim Chart Exhibit attached as Exhibit 16 to the Verified Complaint establishes that Ridge has made the requisite showing to meet its burden. The Infringing Door contains every claim limitation of the Cold Chain Patent. That is the end of the analysis.

> **2.    *Ridge is likely to succeed on its Patent Inducement Claim.***

Under the Patent Infringement Statute, Section 271(b), whoever actively induces infringement of a patent shall be liable as an infringer. "To establish liability under section

9

271(b), a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement." *Cleveland Clinic Found. v. True Health Diagnostics, LLC*, No. 1:15 CV 2331, 2016 U.S. Dist. LEXIS 21907, at *23 (N.D. Ohio Feb. 23, 2016) (quoting *DSU Medical Corp. v. JMS Co. Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006)).

"To state a claim for inducement of patent infringement under 35 U.S.C. § 271(b), 'the patentee must establish first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Stuart v. Rust-Oleum Corp.*, 272 F. Supp. 3d 1019, 1024-25 (S.D. Ohio 2017) (quoting *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd*, 501 F.3d 1307, 1312 (Fed. Cir. 2007)). "More specifically, unlike direct infringement 'the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement.'" *Stuart*, 272 F. Supp. 3d at 1025 (citing *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-756, 131 S. Ct. 2060, 2068 (2011)). Knowledge is attributable to a defendant who acts with willful blindness. *Stuart*, 272 F. Supp. 3d at 1025 (citing *Global-Tech Appliances, Inc.*, 563 F.3d at 766-67).

Altum is all too happy to assist in KNL and TTPS's direct infringement. It actively took steps to induce the infringement by supplying KNL with the panel it specifically configured to make the Infringing Door and instructed KNL on how to use the panel to create the Infringing Door. Altum knew the Infringing Door violated the Cold Chain Patent but assisted KNL anyway. Altum's entire business model is to mimic Ridge, including helping

10

KNL and TTPS, along with Transglobal, to infringe the Cold Chain Patent. Ridge is likely to succeed on its Patent Inducement Claim.

### 3. *Ridge is likely to succeed on its Contributory Infringement Claim.*

35 U.S.C. § 271(c) provides, "[w]hoever offers to sell or sells within the United States . . . a component of a patented machine, manufacture, combination or composition, . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer."

To establish a claim of contributory infringement, a plaintiff must show:

1. Defendants knew the alleged infringing products are material to practicing the invention and have no substantial non-infringing uses;

2. Defendants knew that the alleged infringing products were especially made or especially adapted to infringe the patents at issue; and

3. A third party used the alleged infringing products to directly infringe the patents at issue.

*Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 841 (N.D. Ohio 2021).

Altum knew the panels supplied to KNL were a key component of and material to the Infringing Door. Altum knew the panel was selectively made and specifically produced for the Infringing Door. As demonstrated above using the Claim Chart, KNL and TTPS's sales and offers for sale of the Infringing Door constitutes an infringement of the Cold Chain Patent.

### 4. *Ridge is likely to succeed on its Tortious Interference Claim.*

The elements of tortious interference with a business relationship, are:

1. A business relationship;

11

2. The wrongdoer's knowledge thereof;

3. An intentional interference causing a breach or termination of the relationship; and

4. Damages resulting therefrom.

*Westfall Auto Sales, LLC v. Zurich Am. Ins. Co.*, No. 2:18-cv-1448, 2021 U.S. Dist. LEXIS 5003, at *12-13 (S.D. Ohio Jan. 11, 2021) (citing *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 949 (S.D. Ohio 2003)) (quoting *Barilla v. Patella*, 144 Ohio App. 3d 524, 760 N.E.2d 898, 904 (Ohio Ct. App. 2001)).

As made evident by the Barnes Letter, KNL and Altum are not content with simply infringing on the Cold Chain Patent—they will actively reach out to Ridge's customers and business partners and wrongfully suggest litigation. KNL and TTPS did this for the express purpose of damaging Ridge's business relationships. Unfortunately, such actions fit with Defendants' pattern of attack on Ridge.

### 5. *Ridge is likely to succeed on its False Marking Claim.*

35 U.S.C. § 292 states:

Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public…

Shall be fined not more than $500 for every such offense. Only the United States may sue for the penalty authorized by this subsection.

**(b)**

A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury.

While the statute does not define "competitive injury," it has been held to include wrongful economic loss, costs for analyzing the viability of a patent, deterrence of innovation, stifling

competition, and deterrence of scientific research. *Greene v. Ab Coaster Holdings, Inc.*, No. 2:10-CV-38, 2012 U.S. Dist. LEXIS 136890, at *33 (S.D. Ohio Sep. 25, 2012).

KNL and TTPS specifically advertised to a targeted customer demographic that the Infringing Door was "patented," when it was not. KNL and TTPS have left their false marking on their website even after receiving a cease-and-desist letter from Ridge in June 2023. (Verified Compl. at Exhibit 9). Making such a claim improperly implies to customers and prospective customers that they should avoid purchasing similar single panel roll-up doors from Ridge lest they risk patent infringement. Ridge now must expend great efforts and costs to preserve its statutory rights and defend against Defendants' wrongful conduct. Ridge will succeed on the False Marking Claim as well.

    **C.    Ridge will suffer irreparable harm if injunctive relief is not granted.**

"Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Terves LLC v. Yueyang Aero. New Materials Co.*, No. 1:19-CV-1611, 2022 U.S. Dist. LEXIS 129059, at *4 (N.D. Ohio July 20, 2022) (quoting *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013)). "Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without the right to exclude." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012). "Courts routinely find irreparable harm when the infringer and patent holder are direct competitors." *Gillette Co. v. Save & Disc. LLC*, No. 1:15-cv-636, 2016 U.S. Dist. LEXIS 90925, at *6 (S.D. Ohio July 13, 2016) (citing *Bendix Comer. Vehicle, Sys., LLC v. Haldex Brake Prod. Corp.*, No. 1:09cv176, 2011 U.S. Dist. LEXIS 312, at *16 (N.D. Ohio Jan. 3, 2011)). *See also Summit Indus. Supply, LLC v. Triple Crown*

13

*Consulting, LLC,* No. 1:20-cv-385, 2021 U.S. Dist. LEXIS 134399, at *5 (S.D. Ohio July 19, 2021) (holding the same). "Irreparable harm generally results from misappropriation of intellectual property by a competitor because of the potential for lasting and unjust competitive harm that would otherwise not occur." *Ethicon Endo-Surgery, Inc. v. Crescendo Techs., LLC,* No. 1:07cv1016, 2009 U.S. Dist. LEXIS 75415, at *14-15 (S.D. Ohio Aug. 24, 2009). "There is no other adequate remedy at law when a competitor misappropriates intellectual property to unfairly compete. Money damages are inherently inadequate because they do not restore the wronged party to the position of being the exclusive user of the intellectual property." *Id.* at *16.

"The patent statute provides for injunctive relief to protect against future infringement which may have market effects never fully compensable in money." *Glasstech, Inc. v. Ab Kyro Oy*, 635 F. Supp. 465, 468 (N.D. Ohio 1986) "If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts." *Id.* (quoting *Atlas Powder Company v. Ireco Chemicals*, 773 F.2d 1230, 1233 (Fed. Cir. 1985). Irreparable harm may also be shown by loss of revenue, brand recognition, goodwill, market position, and price erosion. *Hydrojug, Inc. v. Five Below, Inc.*, 625 F. Supp. 3d 684, 716 (N.D. Ohio 2022) (citing *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010); *Bettcher,* 692 F. Supp. 2d at 821). In *Hydrojug,* irreparable harm was shown when customers mistook a competitor's product with the patent holder's, and competitor's product was of a lessor quality. 625 F. Supp. 3d at 716

Ridge is in direct competition with Defendants. By utilizing the Infringing Door, Defendants are taking sales away from Ridge, eroding its brand, goodwill, market position, and price. This is especially true in the small niche market for the patented technology.

14

Irreparable harm to Ridge is the Defendants' objective, and they will succeed absent injunctive relief.

D.   **The balance of the hardships favors Ridge.**

An injunction does not unfairly affect a defendant when it simply prohibits a party from continuing to infringe on a plaintiff's intellectual property rights. *Gillette*, 2016 U.S. Dist. LEXIS 90925, at *7. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Id.* (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008).

This quote from *Broadcom* is apropos, as Altum built its business to be exactly like Ridge, stealing its intellectual property and unfairly competing. Any hardships suffered by Defendants are deserved and a product of their own wrongful conduct.

E.   **The public interest favors granting injunctive relief.**

"The public has a strong interest in maintaining the integrity of patents by enjoining patent infringement." *Gillette*, 2016 U.S. Dist. LEXIS 90925, at *7.

The public will be served by holding Defendants accountable for their actions. Intellectual property rights will be strengthened and companies like Ridge, who do things the proper way, will be rewarded. Also, KNL and TTPS's false marking is especially harmful because it deceives the consuming public by falsely advertising that the Infringing Door is patented when it is not.

IV.  **Conclusion**

This Court should issue a temporary restraining order and preliminary injunction, enjoining Defendants from the conduct referenced on the Motion page of this filing and set forth in the proposed Order submitted along with this Motion for the Court's convenience.

15

Dated:  September 20, 2023

Respectfully submitted,

Respectfully submitted,

*[signature]*

Christopher W. Tackett (0087776)
Graycen M. Wood (0102160)
John P. Miller (0097161)
**Bailey Cavalieri LLC**
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Phone: 614.229.3286
Fax:    614.221.0479
Email:   ctackett@baileycav.com
            gwood@baileycav.com
            jmiller@baileycav.com

Richard A. Sharpe (0058573)
(*Application pending to S.D.*)
**Pearne & Gordon LLP**
1801 East Ninth Street, Suite 1200
Cleveland, Ohio 44114
Phone 216.579.1700
Email: rsharpe@pearne.com

*Counsel for Plaintiff Ridge Corporation*

## **CERTIFICATE OF SERVICE**

I certify a true copy of this document has been served via regular mail on September 20, 2023, upon:

Kirk National Lease Co.,
c/o John Garmhausen
100 S. Main Ave, Suite 300
Sidney, Ohio 45365

Truck & Trailer Parts Solutions Inc.
c/o John Garmhausen
100 S Main Ave, Suite 300
Sidney, Ohio 45365

Transglobal, Inc.
c/o James Schroeder
5489 Brookview Lane
Upper Sandusky, Ohio 43351

Altum LLC
c/o Kyle Timothy Gaines
403 Streamwater Drive
Blacklick, Ohio 43004

Christopher W. Tackett (0087776)