# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **RIDGE CORPORATION,** | : |
| Plaintiff, | : Case No. 2:23-cv-03012 |
| v. | : Chief Judge Algenon L. Marbley |
| | : Magistrate Judge Kimberly A. Jolson |
| **KIRK NATIONAL LEASE CO.,** *et al.*, | : |
| Defendants. | : |

## OPINION & ORDER

This matter is before the Court on Plaintiff Ridge Corporation's ("Ridge") Motion to Exclude Defense Exhibit 48 and Testimony of Dominic Grandominico regarding it from consideration in ruling upon Ridge's request for a preliminary injunction ("PI") (ECF No. 60). On September 20, 2023, Ridge filed a motion for a temporary restraining order ("TRO") and PI against Defendants Kirk National Lease Co. ("KNL"), Truck & Trailer Parts Solutions Inc. ("TTPS"), and Altum LLC ("Altum"). (ECF No. 2).[1] On September 22, 2023, this Court granted Ridge's motion for a TRO after holding a Rule 65.1 Conference. From October 3, 2023 through October 6, 2023, this Court held a PI hearing. On October 17, 2023, Ridge filed the motion sub judice. (ECF No. 60). On October 17, 2023, Altum responded in opposition to Ridge's motion. (ECF No. 61). On October 18, 2023, Ridge replied to Altum's response. (ECF No. 62). For the reasons set forth below, this Court **GRANTS** Ridge's motion (ECF No. 60).

---

[1] Ridge also sued Transglobal, Inc., but voluntarily dismissed all claims against Transglobal, Inc. on October 1, 2023.

1

I.        BACKGROUND

This case involves various patent infringement claims involving a single panel roll-up truck door. Ridge is a manufacturing and engineering company that, among other things, produces advanced composites for use in trucks and trailers. (ECF No. 1 ¶ 16). Defendants also do work for the transportation industry. (*Id*. ¶¶ 40, 43, 48). KNL and TTPS have overlapping ownership and are affiliated entities. (*Id*. ¶ 4). Altum only has three employees who are all former Ridge employees. (*Id*. ¶ 41).

Around October 2018, KNL approached Ridge about a joint venture for a single panel roll-up truck door. (*Id*. ¶¶ 25-28). The parties, however, had a dispute and did not continue with their joint venture. (Id. ¶ 29). Subsequently, KNL and TTPS went into business with Altum to produce a single panel roll-up door. (*Id*. ¶ 42).

On February 19, 2022, KNL filed for a patent for a "single panel roll-up door" ("144 Patent Application). (ECF No. 1 ¶ 32, Exhibit 4). The 144 Patent Application is still pending and, therefore, Defendants do not have a patent.

At some point after the dispute between Ridge and KNL, Ridge discovered United States Patent No. 9,151,084 ("Cold Chain Patent"). (ECF No. 1 ¶¶ 29, 30). The Cold Chain Patent was issued in 2015. (ECF No. 1, Exhibit 1). The Cold Chain Patent provides patent protection for "[a]n article of manufacture for use as an insulated overhead door that is designed to roll open and closed in tracks, with a sheet of thermoplastic material that acts as the outer door membrane and barrier to entry, a sheet of insulating material that acts as a base insulating barrier adhered to the thermoplastic membrane." (*Id*.). The Cold Chain Patent includes nineteen claims. (*Id*.). Claim 1 is most at issue in this case, specifically what is bolded below:

> An insulated overhead door that is designed to roll open and closed in tracks to cover a door opening having a top and a bottom, the insulating overhead door having a first outermost surface, **a second outermost surface opposite the first outermost surface**, a top surface, a bottom surface, a first side surface and a second side surface, both the first outermost surface and **the second outermost surface being larger than any of the top surface**, bottom surface, first side surface and second side surface, the door comprising:
>
>> a thermoplastic membrane comprising glass fibers and having a top side corresponding to the top of the door opening and a bottom side corresponding to the bottom of the door opening, the thermoplastic membrane forming the first outermost surface of the door;
>>
>> a sheet of foam insulating material directly attached to the thermoplastic membrane, **the insulating material extending continuously from the top side to the bottom side of the thermoplastic membrane**, the thermoplastic membrane and insulating material forming a panel that is approximately the size of the door opening to be covered, a length of the panel being the distance between the top side and the bottom side, **the foam insulating material forming the second outermost surface of the door**; and
>>
>> wheels attached to the door allowing the door to fit into tracks to guide the opening and closing of the door,
>
> wherein the overhead door comprises only one of the panel, **the panel being flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks** having a radius of curvature ranging from about 5 inches to about 25 inches, where the track has a first length positioned at an angle, $\Theta$, relative to a track portion of a second length, wherein $\Theta$ ranges from about 80° to about 125°.

(*Id*. at Column 6).

On February 15, 2023, Ridge became the exclusive licensee of the Cold Chain Patent. (*Id*. ¶ 18, Exhibit 2 ¶ 3). On May 1, 2023, the license agreement between Cold Chain and Ridge was amended and restated. (*Id*. ¶ 19, Exhibit 3).

After discovering Defendants' door at a tradeshow and believing that the door infringed on the Cold Chain Patent of which Ridge is the exclusive licensee, Ridge filed its complaint (ECF No. 1) and motion for a TRO and PI (ECF No. 2). On September 21, 2023, this Court held a Rule 65.1 conference. On September 22, 2023, this Court granted Ridge's motion for a TRO. (ECF No. 14). From October 3, 2023 through October 6, 2023, this Court held a PI hearing, during which

3

various officers from Ridge and Defendants' companies testified, including Mr. Dominic Grandominico—an engineer, former Ridge employee, and current Altum employee.

The subject of the motion sub judice is Defense Exhibit 48 ("DE48") and Mr. Grandominico's testimony regarding it. DE48 is a demonstrative exhibit that Mr. Grandominico built to reflect what he believes the Cold Chain Patent protects or what a door constructed pursuant to the Cold Chain Patent would look like. Mr. Grandominico testified that he built DE48 after reviewing the language of the Cold Chain Patent, a 2013 website post from Cold Chain, and a Youtube video of a Cold Chain door. (*See* ECF No. 59 at PageID 1273-1277, 1284-1295, 1298-1301). During the PI hearing, Ridge objected to DE48 and Mr. Grandominico's testimony regarding it. This Court overruled Ridge's objection, explaining that the testimony and demonstrative exhibit were relevant to Defendants' theory of the case; specifically, that Defendants' door does not infringe the Cold Chain Patent and Ridge is attempting to bring to market Defendants' door rather than a door consistent with the Cold Chain Patent. (*See* ECF No. 59 at PageID 1296). This Court further explained that DE48 and Mr. Grandominico's testimony regarding it went to the weight of the evidence, and not the admissibility of the evidence. (*See id*. at PageID 1280, 1293).

Ridge's motion asks this Court to exclude DE48 and Mr. Grandominico's testimony regarding it from consideration when ruling on Ridge's motion for a PI. (ECF No. 60). Altum responded in opposition (ECF No. 61) and Ridge replied (ECF No. 62). Defendants KNL and TTPS confirmed that they did not intend to respond to Ridge's motion. The motion is now ripe for this Court's consideration.

**II.  LAW & ANALYSIS**

In this case, the parties do not dispute that the Cold Chain Patent is valid and that Ridge

4

is the exclusive licensee of the Cold Chain Patent. Rather, the parties dispute whether Defendants' door infringes the Cold Chain Patent. Ridge asserts that Defendants' door contains every claim limitation of the Cold Chain Patent, whereas Defendants argue their door does not infringe the Cold Chain Patent because it does not have a second outermost surface made of a foam material, insulating material extending continuously from the top to the bottom, or material that flexes along the door's entire length. Altum argues that DE48 is relevant to show what Mr. Grandominico, a person skilled in the art, believes the Cold Chain Patent protects or what a door constructed pursuant to the Cold Chain Patent would look like.

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. In considering Ridge's motion, this Court finds DE48 and Mr. Grandominico's testimony regarding it is irrelevant to the Court's decision on Ridge's motion for a PI. One of the factors for a PI is whether the movant has a strong likelihood of success on the merits. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). In a patent infringement action, the Court must conduct a two-step analysis: first, the meaning and scope of the particular claims asserted to be infringed must be interpreted properly; and second, the properly construed claims must be compared to the accused device. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1152 (Fed. Cir. 1997); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Accordingly, this Court's job is to analyze Defendants' door against the text of the Cold Chain Patent. This Court's analysis is not concerned with what kind of door Cold Chain may have sold in the past or what the door Ridge is currently working to bring to market looks like.

As Ridge explains in its motion, various courts have found it improper to compare the accused's product to the patentee's commercial embodiment of the product. *See, e.g., Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent.") (citing *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985)); *Vita-Mix Corporation v. Blendtec, Inc.*, No. 1:15-cv-1118, 2017 WL 3425286, at *6 (N.D. Ohio Aug. 9, 2017) ("[I]t is well settled that the Court may not compare the accused device to a preferred embodiment.") (citing *Zenith Labs., Inc.*, 19 F.3d at 1418); *Star Tech. Grp., Inc. v. Testerion, Inc.*, No. 99-1168, 1999 WL 693829, at *6 (Fed. Cir. Sep. 7, 1999) ("It is fundamental that infringement is determined by comparing the accused device to the claims, rather than comparing the accused device to the figures of the figures of the patent specification.") (citations omitted).

This Court interpreted DE48 to be what Mr. Grandominico believes the Cold Chain Patent protects and looks like if constructed pursuant to the Cold Chain Patent—not an actual commercial embodiment of the Cold Chain Patent. (*See* ECF No. 59 at 36-37, 53). Despite this distinction, this Court finds DE48 and Mr. Grandominico's testimony regarding it irrelevant to Ridge's motion for a PI since the Court has the Cold Chain Patent itself to evaluate and compare against Defendants' door.

### III.  CONCLUSION

For the reasons set forth above, Ridge's Motion to Exclude Defense Exhibit 48 and Testimony of Dominic Grandominico regarding Defense Exhibit 48 from Consideration in

Ruling upon Ridge's Request for a Preliminary Injunction (ECF No. 60) is **GRANTED**.

      **IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: October 23, 2023**