**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **RIDGE CORPORATION,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:23-cv-03012** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **KIRK NATIONAL LEASE CO.,** *et al.,* | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

Before the Court are Plaintiff Ridge Corporation's ("Ridge") Motion for a Preliminary Injunction ("PI") against Defendants Kirk National Lease Co. ("KNL"), Truck & Trailer Parts Solutions Inc. ("TTPS"), and Altum LLC ("Altum")[1] (ECF No. 2) and Defendant Altum's Motion to Join Cold Chain, LLC ("Cold Chain") (ECF No. 27). On September 20, 2023, Ridge filed its complaint and motion for a temporary restraining order ("TRO") and PI. On September 22, 2023, this Court granted Ridge's motion for a TRO after holding a Rule 65.1 conference. On September 28, 2023, Altum filed its motion to join Cold Chain as a party-plaintiff in this case. (ECF No. 27). From October 3, 2023 through October 6, 2023, this Court held a PI hearing. For the reasons set forth below, this Court **GRANTS** Ridge's Motion for a PI (ECF No. 2) and **DENIES** Altum's Motion to Join Cold Chain (ECF No. 27**)**.

---

[1] Transglobal, Inc. was also named defendant. On September 28, 2023, Transglobal, Inc. filed a motion to dismiss or transfer venue. (ECF No. 30). On October 1, 2023, Ridge voluntarily dismissed all claims against Transglobal, Inc. without prejudice. (ECF No. 39). Transglobal, Inc. did not participate in the subsequent PI hearing. Transglobal, Inc. later confirmed with this Court that it has no objection to Ridge's voluntary dismissal. Accordingly, this Court did not consider claims against Transglobal, Inc. for purposes of the PI.

## I.  BACKGROUND

### A. Factual Background

This case involves various patent infringement claims involving a single panel roll-up truck door. Ridge is a manufacturing and engineering company that, among other things, produces advanced composites for use in trucks and trailers. (ECF No. 1 ¶ 16). Defendants also do work for the transportation industry. (*Id*. ¶¶ 40, 43, 48). KNL and TTPS have overlapping ownership and are affiliated entities. (*Id*. ¶ 4). Altum only has three employees who are all former Ridge employees.[2] (*Id*. ¶ 41).

#### 1.  *KNL and Ridge's Joint Venture for a Single Panel Roll-Up Door*

For several years prior to October 2018, KNL purchased Ridge's products. (ECF No. 56 at PageID 812, Lines 4-7). Around October 2018, KNL approached Ridge about a joint venture for a single panel roll-up truck door. (ECF No. 1 ¶¶ 25-29). The benefits of single panel roll-up doors include lighter weight, more durable, less maintenance, easier to install, display logos better, and produce less injuries than traditional truck doors. (ECF No. 56 at PageID 810-811). The parties disagree as to who came up with the design for the single panel roll-up door. The parties agree, however, that KNL did not have a fully functioning single panel roll-up door prior to approaching Ridge. (ECF No. 56 at PageID 817, Lines 21-24; ECF No. 57 at PageID 949, Lines 17-19; ECF No. 57 at PageID 950, Lines 11-15). Additionally, the parties agree that Ridge has a team of engineers, whereas KNL does not. (ECF No. 57 at PageID 950, Lines 23-25; ECF No. 57 at PageID 951, Lines 1-7).

---

[2] Specifically, Mr. Dominic Grandominicio was a fourteen-year co-owner of Ridge and Director of Operations; Mr. Greg Karst was a four-year Ridge employee and Product Development Engineer; and Mr. Kyle Gaines was a thirteen-year Ridge employee and Director of Purchasing. (ECF No. 1 ¶ 41).

Around July 23, 2021, KNL contacted Ridge and said: "After many attempts we have the rollup door working. Actually it works great. Would like to sit down with you to start the paper work to lock this down. Patent, I.P. . . . ." (PE7). The parties, however, had a dispute over safety testing of the door and did not continue with their joint venture. (ECF No. 1 ¶ 29; ECF No. 58 at PageID 1202, Lines 17-22). Subsequently, KNL and TTPS went into business with Altum to produce a single panel roll-up door. (*Id*. ¶ 42).

2. *Defendants' Door*

On February 19, 2022, KNL filed for a patent for a "single panel roll-up door" ("144 Patent Application). (*Id*. ¶ 32, Exhibit 4). KNL did not include Ridge as a joint inventor on the 144 Patent Application. (*Id*. ¶ 34). As of the date of this Opinion and Order, the 144 Patent Application is still pending and, therefore, Defendants do not have a patent.

Around June 2022, KNL and TTPS began selling a single panel roll-up door. (PE53; DE111). Altum supplies "sandwich" panels (i.e. panels containing a layer of foam laminated between two plastic layers) to KNL, and KNL routes grooves, or compression gaps, into the panels. (ECF No. 59 at PageID 1301, Lines 13-17). KNL then sends the panels to Transglobal, Inc. who adds wheels and modifies the panels to become roll-up truck doors. (ECF No. 1 ¶ 46). Transglobal, Inc. then sends the doors back to KNL, and KNL and TTPS sell and install the doors. (ECF No. 1 ¶ 46; ECF No. 57 at PageID 990, Lines 5-7).

Between June 2022 and September 2023, KNL/TTPS sold approximately 177 doors, at a typical retail price of $1,600.00 per door. (PE53; DE111; ECF No. 28 at PageID 367). Altum's business with KNL/TTPS represents approximately 55% of Altum's total business in 2023 thus far. (ECF No. 31 at PageID 440). Around June 2023, Altum proposed an ongoing exclusive supply relationship with KNL/TTPS for the single panel roll-up door. (PE26).

*3. The Cold Chain Patent*

At some point after the dispute between Ridge and KNL, Ridge discovered United States Patent No. 9,151,084 ("Cold Chain Patent"). (ECF No. 1 ¶¶ 29, 30, Exhibit 1). The Cold Chain Patent was issued in 2015 after numerous rounds of rejections and amendments with the U.S. Patent and Trademark Office. (*See* DE7). The Cold Chain Patent is a patent for an "insulated overhead door." (ECF No. 1, Exhibit 1). The Cold Chain Patent provides patent protection for "[a]n article of manufacture for use as an insulated overhead door that is designed to roll open and closed in tracks, with a sheet of thermoplastic material that acts as the outer door membrane and barrier to entry, a sheet of insulating material that acts as a base insulating barrier adhered to the thermoplastic membrane." (*Id*. at PageID 31). The Cold Chain Patent includes nineteen claims, including both independent and dependent claims. (*Id*.). Claim 1, an independent claim, is most at issue in this case, specifically what is bolded below:

> An insulated overhead door that is designed to roll open and closed in tracks to cover a door opening having a top and a bottom, **the insulating overhead door having a first outermost surface, a second outermost surface opposite the first outermost surface**, a top surface, a bottom surface, a first side surface and a second side surface, **both the first outermost surface and the second outermost surface being larger than any of the top surface, bottom surface, first side surface and second side surface**, the door **comprising**:
>
>> a thermoplastic membrane comprising glass fibers and having a top side corresponding to the top of the door opening and a bottom side corresponding to the bottom of the door opening, the thermoplastic membrane forming the first outermost surface of the door;
>>
>> a sheet of foam insulating material directly attached to the thermoplastic membrane, **the insulating material extending continuously from the top side to the bottom side of the thermoplastic membrane**, **the thermoplastic membrane and insulating material forming a panel** that is approximately the size of the door opening to be covered, a length of the panel being the distance between the top side and the bottom side, **the foam insulating material forming the second outermost surface of the door**; and

wheels attached to the door allowing the door to fit into tracks to guide the opening and closing of the door,

wherein the overhead door comprises only one of the panel, **the panel being flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks** having a radius of curvature ranging from about 5 inches to about 25 inches, where the track has a first length positioned at an angle, Θ, relative to a track portion of a second length, wherein Θ ranges from about 80° to about 125°.

(*Id*. at Column 6). Other relevant dependent claims include Claim 4, which states: "[t]he insulated overhead door of claim 1, wherein the insulating foam comprises compression gaps configured to allow the foam to more easily bend during opening and closing of the door;" Claim 9, which states: "[t]he insulated overhead door of claim 1, further comprising an additional membrane that is not the thermoplastic membrane;" and Claim 10, which states: "[t]he insulated overhead door of claim 1, the door having an R value[3] ranging from about 14 to about 50." (*Id*. at Columns 6, 7).

On February 15, 2023, Ridge became the exclusive licensee of the Cold Chain Patent. (ECF No. 1 ¶ 18, Exhibit 2 ¶ 3). On May 1, 2023, the exclusive license agreement between Cold Chain and Ridge was amended and restated. (ECF No. 1 ¶ 19, Exhibit 3). The amended and restated agreement from May 1, 2023 is the final agreement between Cold Chain and Ridge. (ECF No. 56 at PageID 850, Lines 20-23). Under the amended and restated license agreement, Ridge remains the exclusive licensee of the Cold Chain Patent, but Ridge may sublicense the patent to door manufacturers. (ECF No. 1, Exhibit 3 ¶¶ 3, 9, 14). Additionally, both Ridge and Cold Chain have the right to sue for patent infringement. Specifically, paragraph 14 of the agreement states:

> Subject to the following, both Licensor and Licensee shall have the right to initiate a patent infringement action against any third party reasonably believed to be infringing a Licensed Patent, but neither party shall have any obligation to do so. Licensee shall give Licensor the option by written notice or initialing any such action before doing so itself (or issuing any demand or threat of such action). . . . If any such action is initiated by only one party,

---

[3] The R value refers to the door's insulating qualities. (ECF No. 1, Exhibit 1 at Column 1).

the non-initiating party shall provide all cooperation reasonably requested by the party initiating the action.

(*Id.* ¶ 14).

Ridge has not brought its single panel roll-up door to market yet, but it has expended significant time and resources getting it ready for market. (ECF No. 1 ¶ 23). Ridge currently has Non-Disclosure Agreements with door manufacturers and is trading agreement drafts with Whiting Door Manufacturing Corporation ("Whiting Door"). (ECF No. 56 at PageID 822, Lines 1-9). Whiting Door controls approximately 40% of the roll-up door market. (ECF No. 31-15 at PageID 567). If Ridge gets to market with Whiting Door, Ridge anticipates its revenue will increase by millions of dollars annually. (ECF No. 56 at PageID 856, Lines 4-10).

### B. Procedural Background

Around May 2023, Ridge discovered Defendants' door at a tradeshow held by the National Truck Equipment Association. (ECF No. 1 ¶ 47). Ridge also discovered TTPS's website was advertising Defendants' door as a "patented single panel roll door." (*Id.* ¶ 57, Exhibit 8 at PageID 101). The website further stated that the door has a "patented single panel design." (*Id.*, Exhibit 8 at PageID 103). The assertion that Defendants' door is "patented" is incorrect, as the 144 Patent Application is still pending and not yet patented.

After discovering Defendants' door at the tradeshow and believing that the door infringed on the Cold Chain Patent of which Ridge is the exclusive licensee, Ridge sent KNL/TPPS a cease-and-desist letter. (ECF No. 1, Exhibit 9). The letter informed KNL/TTPS that Ridge is the exclusive licensee of the Cold Chain Patent and asserted Ridge's belief that KNL/TTPS are infringing on the Cold Chain Patent. (*Id.*). On August 1, 2023, KNL/TTPS responded to Ridge and denied any infringement. (*Id.*, Exhibit 11). During the time Ridge was communicating with

KNL/TTPS regarding infringement of the Cold Chain Patent, KNL/TTPS sold more doors than it had ever sold before. (PE53; DE111).

On June 9, 2023, Ridge sent Altum a cease-and-desist letter, similar to the letter it sent KNL/TTPS. (ECF No. 1, Exhibit 12). The letter informed Altum that Ridge is the exclusive licensee of the Cold Chain Patent and asserted Ridge's belief that Altum was inducing and contributing to infringement of the Cold Chain Patent. (*Id*.). On July 10, 2023, Altum responded to Ridge and also denied any infringement. (*Id*., Exhibit 13).

On September 6, 2023, an attorney for KNL sent a letter to Ridge's business partner, Whiting Door. (*Id*. ¶ 78, Exhibit 14). The letter enclosed the 144 Patent Application and threatened royalty damages. (*Id*.; ECF No. 56 at PageID 871, Lines 1-9; ECF No. 57 at 70, Lines 21-24). KNL sent this letter to Whiting Door after seeing a video that showed Ridge working with Whiting Door on a single panel roll-up door. (ECF No. 57 at PageID 995, Lines 9-16). After receiving the letter, Whiting Door halted all business with Ridge. (ECF No. 56 at PageID 831, Lines 15-21; ECF No. 58 at PageID 1152, Lines 3-14). On September 11, 2023, five days after sending the letter to Whiting Door, KNL filed substantial amendments to the 144 Patent Application. (ECF No. 1 ¶ 80, Exhibit 15).

On September 20, 2023, Ridge filed its complaint (ECF No. 1) and motion for a TRO and PI (ECF No. 2). Excluding claims against Transglobal, Inc., Ridge's complaint alleges: (1) direct patent infringement against KNL and TTPS; (2) patent inducement against Altum; (3) contributory infringement against Altum; (4) tortious interference with business relationships against KNL, TTPS, and Altum; and (5) false marking against TTPS and KNL. (ECF No. 1). Despite significant testimony and arguments by counsel surrounding co-inventorship of the 144 Patent Application, co-inventorship is not at issue in this case.

Prior to filing its complaint and motion for a TRO and PI, Ridge gave Cold Chain the option of initiating this infringement action instead of Ridge, but Cold Chain declined the option. (*Id*. ¶ 20). On October 3, 2023, Cold Chain and Ridge executed an Acknowledgment confirming that Cold Chain elected not to bring or join the lawsuit now pending. (ECF No. 63-1).

Regarding the infringement claims, Ridge's opinion witness, Richard Sharpe, prepared a claim chart opining that Defendants' door contains every claim within the Cold Chain Patent. (ECF No. 1, Exhibit 16). The photographs in Mr. Sharpe's claim chart are images of Defendants' door. (ECF No. 57 at PageID 993, Lines 11-20). To prepare the claims chart, Mr. Sharpe reviewed the Cold Chain Patent, the patent's prosecution history, photographs of Defendants' door, and a video of Defendants' door from TTPS's website. (ECF No. 59 at PageID 1349, Lines 3-23; ECF No. 59 at PageID 1350, Lines 2-8). Figure 4 of the claim chart, located below, is an illustration of Defendants' door with Mr. Sharpe's opinions as to the various surfaces of the door:



**Figure 4**

On September 21, 2023, this Court held a Rule 65.1 conference. (ECF No. 25). On September 22, 2023, this Court granted Ridge's motion for a TRO. (ECF No. 14). On September

28, 2023, Defendants filed responses to Ridge's motion for a PI. (ECF Nos. 28, 29, 31). That same day, Altum filed a motion to join Cold Chain as a party-plaintiff in this case. (ECF No. 27).

During expedited discovery, Ridge discovered that sales personnel from KNL/TTPS sent numerous emails to prospective customers falsely advertising its door as "patented." (*See* PEs 47, 57, 58, 59, 60, 61, 62, 63, 64, 66).

On October 1, 2023, Ridge filed motions to exclude Defendants' opinion witnesses from testifying at the PI hearing. (ECF Nos. 40, 41). On October 4, 2023, this Court denied Ridge's motions to exclude. (ECF No. 50).

From October 3, 2023 through October 6, 2023, this Court held a PI hearing. During the PI hearing, various officers from Ridge's and Defendants' companies testified, as well as opinion witnesses for all parties. A substantial portion of the testimony at the PI hearing surrounded Prosecution Exhibit 70 ("PE70"), a picture of which is located below. Ridge allege, and Defendants confirm, PE70 is a sales sample of a section of Defendants' door.



**PE70**

On October 17, 2023, Ridge filed a motion to exclude Defense Exhibit 48 ("DE48") and testimony regarding it from consideration in ruling upon Ridge's motion for a PI. (ECF No. 60). An Altum employee built DE48 as a demonstrative exhibit to reflect what he believes the Cold

Chain patent protects or what a door constructed pursuant to the Cold Chain Patent would look like. On October 17, Altum responded in opposition to Ridge's motion. (ECF No. 61). On October 18, 2023, Ridge replied to Altum. (ECF No. 62). On October 20, Altum filed a motion for leave to file a sur-reply. (ECF No. 64). That same day, Ridge filed a response in opposition to Altum's motion for leave to file a sur-reply. (ECF No. 65). On October 20, 2023, this Court denied Altum's motion for leave to file a sur-reply. (ECF No. 66). On October 23, 2023, this Court granted Ridge's motion to exclude. (ECF No. 67).

On October 19, 2023, Ridge filed a response in opposition to Altum's motion to join Cold Chain. (ECF No. 63). On October 27, 2023, Altum replied to Ridge's response. (ECF No. 71).[4]

On October 23, 2023, the parties submitted closing briefs for the PI. (ECF Nos. 68, 69, 70). On October 27, 2023, the parties submitted reply briefs. (ECF Nos. 72, 73, 74, 75). Ridge's Motion for a PI (ECF No. 2) and Altum's Motion to Join Cold Chain (ECF No. 27) are now ripe for this Court's consideration.

## II.    STANDARD OF REVIEW

### A. Preliminary Injunction

Rule 65 of the Federal Rules of Civil Procedure provides for injunctive relief when a party believes it will suffer immediate and irreparable injury, loss, or damage. *See* Fed. R. Civ. P. 65. A preliminary injunction is an "extraordinary remedy" intended to preserve the status quo until trial. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526 (6th Cir. 2017). A preliminary injunction should only

---

[4] KNL/TTPS confirmed with this Court that they did not want to be heard on Altum's motion to join Cold Chain. KNL/TTPS, however, make a standing argument in their response to Ridge's motion for a PI, arguing similarly what Altum argues in its motion to join Cold Chain.

be awarded upon a clear showing that the movant is entitled to such relief. *Southern Glazer's Disrib. Of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (internal quotation marks and citation omitted).

In determining whether to issue a preliminary injunction, the court must consider the following four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation omitted). All four factors must be balanced rather than treated as prerequisites. *Id*. (internal quotation marks and citation omitted).

Specific to patent infringement actions, patentees seeking a preliminary injunction must make the following four-part showing: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

If the court grants a preliminary injunction, it must be stated in specific terms, describe in reasonable detail the act(s) to be restrained, and give the reasons for its issuance. Fed. R. Civ. P. 65(d). Furthermore, "[the PI] should be tailored to restrain no more than what is reasonably required to accomplish its ends." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir. 1978) (internal quotation marks and citation omitted).

**B.  Joinder**

Rule 19 of the Federal Rules of Civil Procedure governs the compulsory joinder of parties. *See* Fed. R. Civ. P. 19. In determining whether a party must be joined under Rule 19, the court must consider: (1) whether the absent party is a necessary party; (2) if the absent party is a necessary party, whether joinder will deprive the court of subject matter jurisdiction; and (3) if joinder is not feasible because it will eliminate the court's ability to hear the case, whether the absent party is indispensable such that the action should be dismissed. *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (citations omitted). To answer whether a party is a necessary party, the court must assess whether the party has "an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

### III.    LAW & ANALYSIS

#### A.  Preliminary Injunction

##### 1.  *Likelihood of Success on the Merits*

A movant is not required to prove her entire case at the preliminary injunction stage, but the movant must show more than a mere possibility of success. *Certified Restoration Dry Cleaning Network,* 511 F.3d at 543 (citations and quotations omitted). Ordinarily, a movant meets its burden if it has "raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citation omitted).

*a.   Direct Infringement against KNL and TTPS*

Ridge first claims direct patent infringement against KNL and TTPS. Direct patent infringement is governed by 35 U.S.C. § 271(a), which states: "Whoever without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent therefor, infringes the patent." Direct patent infringement is a strict-liability offense. *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 639 (2015).

To state a claim for direct patent infringement, a plaintiff must allege sufficient facts that the accused's product contains "elements identical or equivalent to each claimed element of the patented invention." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40 (1997); *see also Ottah v. Bracewell LLP*, No. 2022-1876, 2022 WL 16754378, at *2 (Fed. Cir. Nov. 8, 2022) ("To prove direct infringement, 'one or more claims of the patent [must] read on the accused device literally or under the doctrine of equivalents.'") (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005)). Literal infringement "requires that each and every limitation set forth in a claim appear in an accused product." *Id*. (citing *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005)). Alternatively, under the doctrine of equivalents, a product that does not literally infringe upon a patent "may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Id*. (citing *DePuy Spine, Inc. v. Medtronic Sofamore Danek Inc.*, 469 F.3d 1005, 1016 (Fed. Cir. 2006)).

In a direct patent infringement action, a two-step analysis must be conducted: first, the meaning and scope of the particular claims asserted to be infringed must be interpreted properly; and second, the properly construed claims must be compared to the accused device. *Cybor Corp.*

*v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1152 (Fed. Cir. 1997); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). When conducting claim construction, "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citations omitted). If a claim term is disputed, the starting place is to look at the claim language. *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("It [the claim language] is the best guide to the meaning of a disputed term."). Accordingly, while extrinsic evidence such as expert testimony, dictionaries, and learned treatises can be used in claim construction, extrinsic evidence is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (citations omitted).

Here, the parties do not dispute that the Cold Chain Patent is valid and that Ridge is the exclusive licensee of the Cold Chain Patent. Rather, the parties dispute whether Defendants' door directly infringes the Cold Chain Patent. Ridge asserts that Defendants' door contains every claim limitation of the Cold Chain Patent. KNL and TTPS argue that Ridge is not likely to succeed on the merits because Ridge lacks standing to sue. This Court will address KNL/TTPS's standing argument with Altum's motion to join Cold Chain, analyzed below after the PI analysis.

KNL and TTPS also argue that Defendants' door does not directly infringe the Cold Chain Patent because it does not have a second outermost surface made of a foam material. To support its substantive argument, KNL and TTPS rely on opinion witness Sam Han and the dictionary definition of "outermost." (*See* ECF No. 57 at PageID 1379-1380, 1385, 1404-1405).

This Court must first interpret the meaning and scope of the claims of the Cold Chain Patent, particularly the phrase "second outermost surface." Claim 1 in the Cold Chain Patent

14

specifically defines the "second outermost surface": it is the surface "opposite the first outermost surface," it is "larger than any of the top surface, bottom surface, first side surface and second side surface," and it is made of a "foam insulating material." (*See* ECF No. 1, Exhibit 1, Claim 1 at Column 6). Since the language of Claim 1 defines "second outermost surface," this Court does not find Mr. Han's reliance on the dictionary definition of "outermost" being "farthest out" persuasive. Additionally, KNL and TTPS's assertion that the white thermoplastic layer on Figure 4 is the true second outermost surface on Defendants' door is not persuasive since the Cold Chain Patent has a claim allowing for "an additional membrane that is not the thermoplastic membrane." (*See id.* Claim 9 at Column 7).

After interpreting the meaning and scope of the claims of the Cold Chain Patent, this Court next compares the claims construed in the Cold Chain Patent to Defendants' door. This Court thoroughly analyzed PE70 and the photographs of Defendants' door in Defense Exhibits 43-46 against the Cold Chain Patent and agrees with Mr. Sharpe's opinions in the claim chart and Figure 4.[5] Accordingly, this Court finds Ridge established a strong likelihood that it would be successful on the merits of its direct infringement claim against KNL and TTPS, under literal infringement, or, at the least, the doctrine of equivalents.

> b.   *Patent Inducement and Contributory Infringement against Altum*

Ridge next claims indirect patent infringement against Altum, specifically patent inducement and contributory infringement. Patent inducement is governed by 35 U.S.C. § 271(b), which states: "Whoever actively induces infringement of a patent shall be liable as an

---

[5] Altum argues in its closing brief that Mr. Sharpe's claim chart and testimony should be excluded. (ECF No. 69 at PageID 1485-1486). Altum, however, did not object to Mr. Sharpe's testimony during the PI hearing or file a motion to exclude. Altum also recognizes that its own expert should be excluded based on its argument. This Court finds Mr. Sharpes testimony admissible since he did not testify on the ultimate issue of infringement. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 991 (Fed. Cir. 1995) (Mayer, J., concurring) ("The judge can even advert to the testimony of patent law experts—that is, patent lawyers—for advice on the interpretation of claims."). This Court gave all opinion witnesses testimony the weight this Court believed it deserved.

infringer." Liability for inducing infringement attaches only if the defendant knew of the patent and knew that the induced acts constituted patent infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011). Knowledge is attributable to a defendant who acts with willful blindness. *Id*. at 766–67.

Contributory inducement is governed by 35 U.S.C. § 271(c). To state a claim for contributory infringement, a plaintiff must show that: (1) defendants knew the alleged infringing products are material to practicing the invention and have no substantial non-infringing uses; (2) defendants knew that the alleged infringing products were especially made or especially adapted to infringe the patents at issue; and (3) a third party used the alleged infringing products to directly infringe the patents at issue. *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 840 (N.D. Ohio 2021) (citation omitted).

For both patent inducement and contributory infringement claims, a plaintiff must first prove direct infringement. *Parallel Networks Licensing, LLC v. Microsoft Corp.*, 777 F. App'x 489, 493 (Fed. Cir. 2019) ("To establish indirect infringement, a patentee must show that the defendant's actions led to direct infringement.") (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004)).

Here, Ridge claims Altum knew about the Cold Chain Patent because Ridge sent Altum a cease-and-desist letter regarding the patent. Ridge further claims Altum induced and contributed to infringement by supplying KNL/TTPS with the sandwich panels for the infringing door and instructing KNL/TTPS on how to cut grooves into the panels to create the infringing door. Ridge argues Altum had the expertise to induce infringement given that all three of its employees are former Ridge employees and one Altum employee worked on Ridge and KNL's joint venture for the single panel-roll up door.

Altum argues Ridge cannot prove direct infringement by asserting a "prosecution estoppel" defense. Specifically, Altum argues Cold Chain disclaimed, in the prosecution of its patent, a door with three layers and the use of "multiple rigid, hinged sections." Additionally, Altum argues that Defendants' door does not violate the Cold Chain Patent because it does not have insulating material extending continuously from the top to the bottom and it does not have material that flexes along the door's entire length. Altum primarily replies on opinion witness Jason Foster, specifications and figures within the Cold Chain Patent, and the patent's prosecution history to support its arguments.

As an initial matter, this Court finds the figures and specifications within the Cold Chain Patent less significant to the Court's analysis than the claims themselves. *See Star Tech. Grp., Inc. v. Testerion, Inc.*, No. 99-1168, 1999 WL 693829, at *6 (Fed. Cir. Sep. 7, 1999) ("It is fundamental that infringement is determined by comparing the accused device to the claims, rather than comparing the accused device to the figures of the patent specification.").

As for Altum's prosecution estoppel defense argument, the doctrine of prosecution estoppel "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)). For prosecution estoppel to apply, a disavowal must be clear and unmistakable. *Id*. In this case, the phrase "multiple rigid, hinged sections" does not appear in the final version of the Cold Chain Patent. As such, Cold Chain did not abandon any limitation to exclude "multiple rigid, hinged sections." Furthermore, the Cold Chain Patent contains a claim for compression gaps, specifically Claim 4, which states: "The insulated overhead door of claim 1, wherein the insulating foam comprises compression gaps configured to allow the foam to more easily bend

17

during opening and closing of the door." (ECF No. 1, Exhibit 1, Claim 4 at Column 6). The fact

that Claim 4 is a dependent claim does not change this Court's analysis since Claim 1 uses the

open language "comprising," which is "well understood to mean 'including but not limited to.'"

*CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). Accordingly, this

Court does not find Cold Chain disavowed "multiple rigid, hinged sections."

With respect to Altum's argument that Cold Chain disclaimed a door with three layers,

this Court is not persuaded. Again, Claim 1 uses the open language "comprising" rather than

"consisting." *See id*. As such, the Cold Chain Patent does not say the door must *only* have two

layers; rather, it says the door needs to have *at least* two layers (i.e. the first outermost layer

made of thermoplastic and the second outermost layer made of a foam insulating material). (*See*

ECF No. 1, Exhibit 1, Claim 1 at Column 6).  Additionally, Altum's argument that the Cold

Chain Patent only provides for two layers does not make sense considering the Cold Chain

Patent has a claim allowing for an additional membrane that is not the thermoplastic membrane.

(*See id.* Claim 9 at Column 7). Therefore, this Court does not find Altum has a prosecution

estoppel defense.

Turning to Altum's argument that Defendants' door does not infringe the Cold Chain

Patent because it has low insulation, this Court is also not persuaded. There was no testimony at

the PI hearing from a person with the technical skill to evaluate Defendants' door's R value.[6]

The Cold Chain Patent also does not specify a particular R value. Rather, the patent only gives

examples of R values in dependent Claim 10, which states: "The insulating overhead door of

claim 1, the door having an R value ranging from about 14 to about 50." (ECF No. 1, Exhibit 1,

---

[6] During the PI hearing, R value was described as the "thermosresistance to heat" and "the ability for a material to keep heat out." (ECF No. 59 at PageID 1247, 1290). The Federal Trade Commission describes "R value" as the numeric measure of a product's ability to restrict heat flow and, thus, to reduce energy costs—the higher the R-value the better the product's insulating ability." *See* 70 Fed. Reg. 31258 (May 31, 2005).

Claim 10 at Column 7). The detailed description of the patent makes clear that 14 and 50 are just example R values. (*See id*. at Column 5 stating: "Example R values for the door can range from about 14 to about 50. The R value van be increased by increasing the thickness of the door and the amount of EVA foam that is used."). Since this Court does not have reliable evidence of Defendants' door's R value and the patent does not require a particular R value, this Court finds Altum's low-insulation argument unpersuasive.

Moreover, this Court disagrees with Altum's claim that Defendants' door does not have insulating material extending continuously from the top to the bottom. Defendants' door contains one sheet of insulating foam material attached to the thermoplastic membrane surface. The horizontal grooves do not change this fact.

Finally, this Court disagrees with Altum's claim that the Defendants' door is not flexible along the entire length of the door. Defendants' door logically has to be flexible along the entire length of the door, otherwise it would not be able to transverse a curve. Therefore, this Court finds direct infringement in this case.

After finding direct infringement, this Court turns to the indirect patent infringement claims. This Court finds the elements of patent inducement and contributory infringement are met in this case. Specifically, Altum knew about the Cold Chain Patent from Ridge's cease-and-desist letter. Additionally, Altum knew that instructing KNL/TTPS on how to cut grooves into the panels to create the infringing door induced infringement, especially since Altum is made up of engineers, whereas KNL/TTPS are not. Furthermore, the panels and instruction Altum provide to KNL/TTPS are material to Defendants' door and have no substantial non-infringing uses[7]. Moreover, Altum knew Defendants' door was especially made to infringe the Cold Chain Patent

---

[7] Altum alleges the panels are generic, stock panels, but there was testimony at the PI hearing that Altum makes custom order panels for roll-up door customers. (*See* ECF No. 57 at PageID 988-989).

since Altum is made up of former Ridge employees and one Altum employee worked on Ridge

and KNL's joint venture for the single panel roll-up door. Finally, KNL and TTPS used Altum's

panels and instruction directly to infringe the Cold Chain Patent and sell single panel roll-up

doors. Accordingly, this Court finds Ridge established a strong likelihood that it would be

successful on the merits of its indirect infringement claims against Altum.

### c. *Tortious Interference with Business Relationships against KNL, TTPS, and Altum*

Ridge next claims tortious interference with business relationships against Defendants. In

Ohio, the elements of tortious interference with a business relationship are: "(1) a business

relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a

breach or termination of the relationship; and (4) damages resulting therefrom." *Westfall Auto*

*Sales, LLC v. Zurich Am. Ins. Co.*, No. 21-3126, 2021 WL 5298540, at * 4 (6th Cir. Nov. 15,

2021) (citation omitted).

Here, Ridge claims KNL/TTPS tortiously interfered with Ridge's business relationship

with Whiting Door by sending a letter threatening royalty damages. Ridge asserts that after

Whiting Door received the letter, Whiting Door halted all business with Ridge. KNL/TTPS do

not dispute that elements 1 and 2 of tortious interference with a business relationship are met in

this case, but dispute elements 3 and 4. KNL/TTPS also argue that Ridge's allegation is

preempted by federal patent law and the First Amendment. Specifically, KNL/TTPS argue that

the letter sent to Whiting Door was a notice complying with federal patent law that requires a

business to notify others of pending patent applications to lay the groundwork for future claims

of pre-issuance royalties.

This Court is not convinced by KNL/TTPS's arguments. Mr. Jeff Phlipot, Chief

Executive Officer of KNL and President of TTPS, testified at the PI hearing that he contacted his

20

patent lawyer after learning that Ridge might be working with Whiting Door on a single panel roll-up door and worked with his patent lawyer to send the letter to Whiting Door threatening royalty damages. (*See* ECF No. 57 at PageID 994-995). As such, it appears the letter was specifically targeting Ridge and its partnership with Whiting Door, rather than being a generic, form-letter simply complying with patent law.

Additionally, at the time KNL/TTPS sent the letter to Whiting Door, KNL/TTPS knew Whiting Door was the leading door manufacturer in the industry. (*See* DE14). Furthermore, KNL/TTPS knew the letter was an "empty threat" since KNL/TPPS were working on substantial amendments to the 144 Patent Application at the time the letter was sent, which precludes the possibility of receiving royalty damages from the date of publication. (*See* ECF No. 56 at PageID 871, Lines 10-20). Accordingly, this Court finds all elements of tortious interference with a business relationship have been satisfied with respect to KNL and TTPS.

Ridge also claims Altum tortiously interfered with Ridge's joint venture with KNL for a single panel roll-up door. This Court finds Altum knew of Ridge's relationship with KNL/TTPS given that Altum is made up of all former Ridge employees. Based on the evidence presented, it is unclear to this Court, however, whether Altum intentionally interfered with the joint venture or whether KNL sought out Altum. Therefore, this Court finds Ridge did not establish a strong likelihood that it would be successful on the merits of its tortious interference with a business relationship claim with respect to Altum.

### d.   *False Marking against KNL and TTPS*

Last, Ridge claims false marking against KNL and TTPS. A claim for false marking of a patent is governed by 35 U.S.C. § 292, which states: "Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or

number importing that the same is patented, for the purpose of deceiving the public . . . shall be fined . . . . A person who has suffered a competitive injury as a result of a violation of this section may file a civil action . . . for recovery of damages . . . ."

Here, Ridge claims TTPS advertised on its website and in numerous emails to prospective customers that Defendants' door was "patented" when it, in fact, is not. Ridge provided screenshots of TTPS's website and copies of emails sent from TTPS to prospective customers as evidence. During the PI hearing, Mr. Phlipot conceded that TTPS's website and marketing emails falsely marked Defendants' door as "patented." (*See* ECF No. 57 at PageID 1010, Lines 7-21). Mr. Phlipot testified that he was not sure how long the false advertisements were present on TTPS's website, but he suspected about one year. (ECF No. 57 at PageID 969, Lines 16-20). Defendants argue this false marking claim is moot given that Defendants have represented that they will not claim their door is "patented" unless and until the 144 Patent Application is granted. Nonetheless, this Court finds Ridge established a strong likelihood that it would be successful on the merits of its false marking claim.

Since Ridge established a strong likelihood that it would be successful on the merits of all claims against Defendants (minus tortious interference with a business relationship against Altum), this factor of the PI test weighs in favor of granting the PI.

### 2. *Irreparable Injury*

The next factor of the PI analysis is whether the movant would suffer irreparable injury without the injunction. Generally speaking, injury is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). For patent cases, however, "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on

22

such terms as the court deems reasonable." 35 U.S.C. § 283. Although there is no longer a presumption of irreparable harm upon a showing of patent infringement, courts should not ignore "the fundamental nature of patents as property rights granting the owner the right to exclude." *Robert Bosch LLC v. Pulon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

Damages to a plaintiff's goodwill and reputation are difficult to quantify, but can amount to irreparable harm. *See, e.g., Bluemile, Inc. v. YourColo, LLC*, No. 2:11-cv-497, 2011 WL 13233391, at *6 (S.D. Ohio July 8, 2011); *Eat BBQ LLC, et al. v. Walters*, No. 12-71-GFVT, 2012 WL 5835679, at *5 (E.D. Ky. Nov. 16, 2012). Additionally, loss of market share, price erosion, and damages to customer relationships can amount to irreparable harm. *See, e.g., Trebro Mfg., Inc. v. Firefly Equip.*, LLC, 748 F.3d 1159, 1170 (Fed. Cir. 2014) (finding irreparable harm where any sale by competitor was lost customer for patent owner and patent owner was likely to lose significant market share as well as customers); *Celis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) (finding irreparable harm where patentee would have lost value of its patent as well as suffered price erosion, damage to ongoing customer relationships, and loss of customer goodwill through later effort to restore original price); *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (finding irreparable harm where alleged infringement would cause price erosion and reduction in market share); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (finding irreparable harm where patentee would lose revenues and goodwill, and would be required to reduce its research and development activities).

Here, Ridge claims Defendants are eroding Ridge's brand, goodwill, reputation, business opportunities, market position, and price, especially in what Ridge claims is a "niche market." Defendants argue any injury to Ridge is purely speculative, especially since they have yet to sell a

door. Defendants further argue the roll-up door market is not a niche market and any alleged injury to Ridge is fully compensable by money damages.

This Court finds Ridge provided sufficient evidence that it would suffer irreparable harm without a PI. It is irrelevant to the irreparable harm analysis that Ridge has not yet gone to market with its door, especially considering the letter KNL sent to Whiting Door caused Whiting Door to halt bringing Ridge's door to market. *See Trebro Mfg., Inc.*, 748 F.3d at 1171 (finding the fact that the patentee does not presently practice the patent does not detract from its likely irreparable harm). Additionally, Ridge and Defendants are direct competitors.[8] Defendants advertised its door as "patented" when it is not for at least one year and reached out to numerous prosecutive customers advertising its door as "patented." KNL/TTPS did not correct to prospective customers their assertion that they have a patented product when they, in fact, do not. (ECF No. 57 at PageID 970- 982). By advertising their door as "patented," Defendants gained attention and momentum in the transportation market since patents give businesses an image of expertise and customers invest in patented products because of their security. (*See* ECF No. 58 at PageID 1151, Lines 1-5). Ultimately, it will be harder for customers to trust Ridge's patented product when it gets to market since Defendants have claimed their near identical product is patented. (*See id*.). Given the length of time Defendants falsely advertised their product as "patented" and the importance of a patent to businesses and customers, this Court finds Ridge has shown more than speculative harm and money damages would not suffice. Accordingly, this factor weighs in favor of granting the PI.

---

[8] KNL/TTPS argue that Ridge and Defendants are not direct competitors because KNL/TTPS sells its door as a replacement for doors on existing trucks, whereas Ridge markets to original equipment manufacturers. Nothing is stopping KNL/TTPS, however, from marketing to original equipment manufactures, nor is anything stopping Ridge from selling its door as a replacement for doors on existing trucks. Therefore, this Court finds KNL/TTPS's argument unpersuasive.

### 3. Substantial Harm to Others

The next factor of the PI analysis is whether issuance of the injunction would cause substantial harm to others. Defendants argue their growing, thriving business selling a successful product to the trucking industry will suffer substantial harm if a PI is imposed. Altum alleges it will be forced to lay off most of its employees and will lose substantial revenue if a PI is imposed. Altum also argues, when weighing hardships, this Court should consider the fact that Ridge only brought this lawsuit as retaliation for KNL not listing Ridge as a co-inventor on the 144 Patent Application. Ridge claims any harm to Defendants should not be given weight since they have "unclean hands."

This Court is not concerned with Ridge's motivation for this lawsuit or the alleged co-inventorship claims. Defendants' losses, however, are a result of their own calculated risk in selling a single panel roll-up door with knowledge of the Cold Chain Patent. *See Celsis In Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) (finding substantial harm to competitors did not weigh against granting a PI when competitor's losses were a result of its own calculated risk in selling a product with knowledge of the patent). Nevertheless, when considering the substantial harm alleged by Defendants and the irreparable harm to Ridge, this Court finds this factor is neutral to this Court's overall PI analysis.

### 4. Public Interest

The last factor of the PI analysis is whether the public interest would be served by the issuance of the injunction. Ridge argues the public has an interest in intellectual property being protected, while Defendants argue the public will suffer with a PI because only Defendants—and not Ridge—are currently selling a single panel roll-up door, which is safer than a traditional roll-up door. This Court finds the public's current access to a single panel roll-up door does not

override the recognized public interest to enforce patent rights, especially considering Defendants did not engage in the required quality assurance testing for its door. *See PPG Industries, Inc. v. Guardian Industries Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996) (discussing "the strong public policy favoring the enforcement of patent rights."). Accordingly, this factor weighs in favor of granting a PI.

When balancing the four factors for a PI, this Court finds the factors weigh in favor of granting a PI. Therefore, this Court **GRANTS** Plaintiff's Motion for a PI against KNL, TTPS, and Altum (ECF No. 2).

### 5. Bond

This Court must next consider the bond requirement in Rule 65(c), which states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Roth v. Bank of the Commonwealth*, 583 F.2d 527, 538-39 (6th Cir. 1978) (noting the bond requirement is discretionary, but the district court must expressly consider the question).

In this case, none of the parties briefed the bond requirement. The parties provided a spreadsheet for KNL and TTPS's profits from the door (*see* PE53, DE111), but not Altum's profits, if any[9]. Based on the evidence before this Court, therefore, this Court finds a $165,000 bond appropriate, which is the approximate total amount KNL and TTPS profited with the sale of its door between June 2022 and September 2023. (*See id*.).

---

[9] All the Court knows is that Altum alleges its stands to lose more than $10,000 per week if enjoined. (*See* ECF No. 31 at PageID 440).

26

### B.  Joinder

A "patentee" may bring a civil action for patent infringement. 35 U.S.C. § 281. The term

"patentee" includes "not only the patentee to whom the patent was issued but also the successors

in title to the patentee." 35 U.S.C. § 100(d). If the party asserting infringement is not the patent's

original patentee, "the critical determination regarding a party's ability to sue in its own name is

whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere

license." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed.

Cir. 2019) (quoting *AsymmetRx, Inc. v. Biocare Med., LLC,* 582 F.3d 1314, 1318-19 (Fed. Cir.

2009)). In distinguishing between "an assignment" and a "mere license," the court must

"examine whether the agreement transferred all substantial rights to the patents." *Id*.

When an exclusive licensee has "all substantial rights" to the patent, it can be considered

an assignee, and may bring an infringement suit itself without joining the patent owner. *Int'l

Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007) (citations

omitted); *McNeilab, Inc. v. Scandipharm, Inc.*, No. 94-1508, 1996 WL 431352, at *2 (Fed. Cir.

July 31, 1996). If, however, "there is an exclusive license agreement . . . but the exclusive license

does not transfer enough rights to make the licensee the patent owner, either the licensee or the

licensor may sue, but both of them generally must be joined as parties to the litigation." *Alfred E.

Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1360-61 (Fed. Cir. 2010)

(citing *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006)).

Therefore, generally speaking, "a patent owner should be joined, either voluntarily or

involuntarily, in any infringement suit brought by an exclusive licensee having fewer than all

substantial rights. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d

1333 (Fed. Cir. 2001) (citing *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir.

2000)); *see also Abbott Lab. V. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995); *Rite-Hite Corp v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995); *Mentor H/S, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001); *Textile Prods. Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998); *Indep. Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459 (1926).

In order to determine whether there was a transfer of all substantial rights to the patent, the court must "ascertain the intention of the parties and examine the substance of that which was granted by the license agreement." *Great Lakes Intellectual Prop. Ltd. V. Sakar Intern., Inc.*, 516 F. Supp. 2d 880, 886 (W.D. Mich. 2007) (citing *Mentor H/S, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001)). When examining the substance of the license agreement, the court should consider the following elements: transfer of the exclusive right to make, use, and sell products or services under the patent; the scope of the licensee's right to sublicense; the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement; the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee; the duration of the license rights granted to the licensee; the ability of the licensor to supervise and control the licensee's activities; the obligation of the licensor to continue paying patent maintenance fees; the nature of any limits on the licensee's right to assign its interests in the patent; and the nature and scope of the licensor's retained right to sue accused infringers. *Alfred E. Mann*, 604 F.3d at 1360-61.

Here, Altum, and KNL/TTPS in response to Ridge's motion for a PI, argues that Cold Chain did not transfer all substantial rights to the patent to Ridge because Cold Chain retains the right to sue under the license agreement. Altum argues Cold Chain is a necessary and indispensable party that must be joined as a party-plaintiff in this case and KNL/TTPS argues Ridge lacks standing and, thus, is not likely to succeed on the merits for purposes of the PI.

28

Ridge claims Cold Chain did transfer all substantial rights to the patent to Ridge so it has standing to sue, and Cold Chain does not need to be joined since Cold Chain declined to initiate and join this lawsuit and tendered all rights to the litigation to Ridge.

This Court finds Cold Chain transferred all substantial rights to Ridge such that Cold Chain is not a necessary party and does not need to be involuntarily joined under Rule 19. While Cold Chain retained the right to sue under the license agreement, Ridge's rights are essentially unfettered. For example, Ridge can decide whether or not to bring suit, when to bring suit, where to bring suit, what claims to assert, what damages to seek, whether to seek injunctive relief, whether to settle the litigation, and the terms on which the litigation will be settled. (*See* ECF No. 1, Exhibit 3 ¶ 14). Additionally, based on the language of the license agreement, Cold Chain intended for Ridge to be able to pursue a patent infringement suit without the need for Cold Chain to participate as a party in the litigation. Specifically, the agreement states "[i]f any such action is initiated *by only one party*, the non-initiating party shall provide all cooperation reasonably requesting by the party initiating the action." (*Id.*) (emphasis added). Based on the license agreement itself, this Court finds Cold Chain transferred all substantial rights to Ridge.

Aside from the license agreement, Cold Chain and Ridge executed an Acknowledgment confirming that Cold Chain tendered full rights to Ridge to prosecute this infringement action. (ECF No. 63 at PageID 1433) (citing ECF No. 63-1). Accordingly, Cold Chain's absence does not impair or impede Cold Chain's ability to protect its interests in the patent. Furthermore, Cold Chain's absence does not subject Defendants to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations since Cold Chain cannot later bring a separate patent infringement action against Defendants involving the same claims and same subject matter. Therefore, this Court finds Cold Chain is not a necessary party and does not need to be

involuntarily joined as a party-plaintiff in this case. Accordingly, this Court **DENIES** Altum's motion (ECF No. 27).

## IV.    CONCLUSION

### A.  Preliminary Injunction

As stated above, when balancing the four factors for a PI, this Court finds the factors weigh in favor of granting a PI. Therefore, Plaintiff's Motion for a PI against KNL, TTPS, and Altum (ECF No. 2) is **GRANTED**. Specifically, Defendants are **ENJOINED** from the following:

1. Continuing to manufacture, advertise for sale, sell, or further contract to sell the "Infringing Door," as defined in the Complaint (ECF No. 1) or any other infringing door, in violation of United States Patent No. 9,151,084 ("Cold Chain Patent");

2. Inducing any other person or entity to manufacture, advertise for sale, or sell the Infringing Door or any other door that infringes the Cold Chain Patent;

3. Contributing to the manufacture, advertisement for sale, or selling of the Infringing Door or any other door that infringes the Cold Chain Patent; and

4. Tortiously interfering with Ridge's business relationships by making false claims related to the Infringing Door to Ridge's customers or business partners, including barring Defendants from falsely asserting that any aspect of the Infringing Door is "patented" by Defendants.

Additionally, Ridge is **ORDERED** to post bond in the amount of **$165,000**, which it must deliver to the Clerk of Court by **Friday, November 10, 2023, at 3:00 p.m**.

### B.  Joinder

For the reasons set forth above, Altum's Motion to Join Cold Chain, LLC (ECF No. 27) is **DENIED**.

   **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  November 3, 2023**