IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RIDGE CORPORATION,** *et al.*, : | |
| : | |
| **Plaintiffs,** : | Case No. 2:23-cv-03012 |
| : | |
| v. : | Judge Algenon L. Marbley |
| : | |
| **KIRK NATIONAL LEASE CO.,** *et al.*, : | Magistrate Judge Kimberly A. Jolson |
| : | |
| : | |
| **Defendants.** : | |

**OPINION AND ORDER**

This matter is before this Court on a Renewed Motion for a Temporary Restraining Order ("TRO") filed by Plaintiffs Cold Chain and Ridge Corporation ("Ridge") (collectively, "Plaintiffs") against Defendants Kirk National Lease Co. ("KNL"), Truck & Trailer Parts Solutions Inc. ("TTPS"), and Altum LLC ("Altum") (collectively, "Defendants"). (ECF No. 120). This Court held a 65.1 conference on Friday, September 20, 2024. For the reasons set forth below, this Court **GRANTS** Plaintiffs' Motion (ECF No. 120).

I.  BACKGROUND[1]

A. Factual Background

Ridge is a manufacturing and engineering company that, among other things, produces advanced composites in the transportation industry. (ECF No. 1 ¶ 16). KNL, TTPS, and Altum are in the same line of business as Ridge. (*Id*. ¶¶ 40, 43, 48). KNL and TTPS have overlapping ownership and are affiliated entities, and Altum has three employees who are former Ridge employees. (*Id*. ¶¶ 4, 41).

---

[1] Given that Plaintiffs' current request for a PI is materially similar, albeit narrower, than Ridge's prior request, for the sake of efficiency of judicial resources, this Court has lifted a significant portion of facts and analysis from its prior opinion. (*See* ECF No. 77).

1

In 2018, Ridge and KNL pursued a joint venture together for a single panel roll-up door but did not proceed with the joint venture. (*Id*. ¶¶ 25-29). Then, in February of 2022, KNL filed for a patent for a single panel roll-up door ("144 Patent Application). (*Id*. ¶ 32, Exhibit 4). KNL did not list Ridge as a joint inventor on the application and declined to do so even after Ridge confronted it. (*Id*. ¶¶ 34, 36, 38).[2]

In 2015, the United States Patent and Trademark Office issued Patent No. 9,151,084 ("Cold Chain Patent"), providing patent protection for "[a]n article of manufacture for use as an insulated overhead door that is designed to roll open and closed in tracks, with a sheet of thermoplastic material that acts as the outer door membrane and barrier to entry, a sheet of insulating material that acts as a base insulating barrier adhered to the thermoplastic membrane." (*Id*. ¶¶ 17, 30, 31, Exhibit 1). Ridge became the exclusive licensee of this Cold Chain Patent in February of 2023, and Plaintiffs updated and restated their license agreement in May of 2023. (*Id*. ¶ 18, Exhibit 2; *Id*. ¶ 19, Exhibit 3). Ridge has not yet brought its single panel roll-up door to market but has expended significant time and resources getting it ready for market. (*Id*. ¶ 23).

Based on Ridge's information and belief, Altum supplies door panels to KNL and TTPS, who then sends the door panels to Transglobal[3] to add hardware and modifications. (*Id*. ¶ 46). Transglobal then sends the panels back to KNL and TTPS to be sold as single panel roll-up doors. (*Id*.). Around May of 2023, Ridge discovered Defendants' door at a tradeshow held by the National Truck Equipment Association. (*Id*. ¶ 47). At that time, TTPS's website advertised that it produces

---

[2] Relatedly, at the First TRO hearing, KNL argued that KNL went to Ridge with the product design and Ridge merely drew it up. Regardless, the 144 Patent Application is still pending.
[3] Transglobal was previously a defendant in this litigation, but Ridge voluntarily dismissed it. (*See* ECF No. 39).

a "patented single panel roll door." (*Id*. ¶ 57, Exhibit 8).[4] The website further stated that the door has a "patented single panel design" and that the door would be "Market-Ready Q3 2023." (*Id*.).

As a result of these discoveries, in June of 2023, Ridge sent cease-and-desist letters to KNL, TPPS, Altum, and Transglobal explaining Ridge is the exclusive licensee of the Cold Chain Patent and requesting that they cease offering for sale its infringing product. (*Id*. ¶ 35, Exhibit 9; *Id*. ¶ 70, Exhibit 12; *Id*. ¶ 72, Exhibit 17). Ridge also offered KNL and TTPS an opportunity to sublicense its Cold Chain Patent and come to a settlement agreement regarding its infringing product. *Id*. Separately, both (1) KNL and TTPS and (2) Altum responded to Ridge denying infringement; Transglobal never responded. (*Id*. ¶ 69, Exhibit 11; *Id*. ¶ 71, Exhibit 13).

On September 6, 2023, an attorney for KNL sent a letter to Ridge's business partner, Whiting Door Corporation, who helps manufacture Ridge's door, discussing the 144 Patent Application and the possibility of royalty damages. (*Id*. ¶ 78, Exhibit 14). On September 11, 2023, KNL's attorney filed a response amending the subject matter of the claims pending in the 144 Patent Application. (*Id*. ¶ 80, Exhibit 15).

### B. Initial Legal Proceedings

On September 20, 2023, Ridge filed its Complaint (ECF No. 1) and its first request for a TRO (ECF No. 2). In its Complaint, Ridge alleges: (1) direct patent infringement against KNL, TTPS, and Transglobal; (2) patent inducement against Altum; (3) contributory infringement against Altum; (4) tortious interference with business relationships against KNL, TTPS, and Altum; and (5) false marketing against TTPS and KNL. (ECF No. 1).

After a Rule 65.1 Conference on Ridge's request for a TRO (ECF No. 25), this Court granted Ridge's Motion, and therefore collected a $10,000 bond from Ridge and scheduled a

---

[4] Any assertion that Defendants' door is "patented" is incorrect, as the 144 Patent Application is still pending and not yet patented.

3

preliminary injunction ("PI") hearing (ECF No. 14). Shortly thereafter, Altum sought to add Cold Chain—the owner of the Cold Chain Patent—to this case. (ECF No. 27). Transglobal then questioned whether venue is proper in front of this Court (ECF No. 30), in response to which Ridge voluntarily dismissed Transglobal from this case without prejudice (ECF No. 39).

After a four-day PI hearing and opening and reply PI briefing, this Court granted Ridge's request for a PI and denied Altum's request to join Cold Chain as a necessary party. (ECF No. 77). In so doing, this Court found that while Defendants alleged that they will be substantially harmed by the injunction, a PI is nonetheless warranted because Ridge provided sufficient evidence of: (1) a strong likelihood of success on the merits as to all of its claims except a tortious interference claim against Altum; (2) an irreparable injury should a PI not issue; and (3) the importance of the public interest to enforce patent rights. (*Id.* at 12–26). And as a fundamental matter, this Court concluded that, as the exclusive licensee with "all substantial rights" to the Cold Chain Patent, Ridge is able to bring this suit without adding Cold Chain to the litigation. (*Id.* at 27–30).

Defendants disagreed and appealed to the Federal Circuit. (ECF No. 78). Defendants also sought a stay of this Court's imposition of a TRO (ECF No. 79), which this Court denied for reasons similar to those in its opinion granting Ridge's request for a PI (ECF No. 78). This Court then held in abeyance Altum's motion to dismiss all claims against it pending the outcome of Defendants' appeal. (ECF Nos. 85, 87).

### C. Federal Circuit Remand

In August of 2024, the Federal Circuit vacated and remanded this Court's denial of joinder and grant of PI relief, without reaching the merits of this Court's PI analysis. (ECF No. 94). The Federal Circuit explained that only a "patentee"—such as an exclusive licensee with "all substantial rights"—can bring a civil suit for patent infringement, but that Ridge is not a "patentee"

4

under its precedent. The appellate court evaluated a host of factors in so deciding—the same factors this Court applied—but emphasized that "[t]he exclusive right to make, use, and sell, as well as the nature and scope of a patentee's retained right to sue … are *the most important considerations*[.]" (ECF No. 94 at 8 (emphasis added) (citing *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1320 (Fed. Cir. 2021)). And because Cold Chain retained not only the right to sue but a right of first refusal and as well as considerable involvement otherwise, the Federal Circuit found that the plain text of Cold Chain's licensing agreement made clear that "the [a]greement did not convey all substantial rights in the [relevant] patent to Ridge" so "Ridge is not a "patentee[.]" (*Id.* at 11).

Notably, after the Federal Circuit held oral argument but before the court issued its opinion, Ridge filed an addendum to its prior agreement with Cold Chain that seeks to "clarify and amend" the prior agreement to crystalize their "inten[t] that the License Agreement provide [Ridge] with all substantial rights" in the relevant patent. (ECF No. 92-1). But the Federal Circuit did not consider this evidence as it "is not properly part of the record on appeal." (ECF No. 94 at 12). That court went on, however, to explain that "a *nunc pro tunc* agreement cannot establish Ridge's status as a … patentee[.]" (*Id.* at 12 n.2).

Simultaneous to the vacatur and remand, Ridge moved to "recertify" the prior PI, arguing that the agreement addendum "removes Cold Chain from having *any* right to sue under the [relevant p]atent and, thus, entirely moots any argument related to Ridge's lack of standing." (ECF No. 93 at 2). In Ridge's view, "since none of the controlling facts" supporting the initial grant of PI have changed, the PI should be recertified. (*Id.*). This Court held a telephonic status conference on Ridge's Motion on August 9, 2024, during which the parties discussed the issue of joinder of Cold Chain. (ECF No. 95). Ridge agreed to Cold Chain to this litigation by way of an amended

5

complaint, and Cold Chain has since been added as a plaintiff, so this Court denied KNL and TTPS's joinder-related motion to dismiss. (ECF No. 105 (dismissing ECF No. 96 (joinder motion to dismiss) and granting ECF No. 102 (motion for leave to file an amended complaint adding Cold Chain)).

This Court scheduled a PI hearing to begin October 1, 2024, and ordered the parties to submit a joint stipulation of facts given the extensive fact finding at the prior hearing. (ECF No. 103). In line with this Court's directive, Plaintiffs filed a renewed request for a PI, and also filed a motion seeking a TRO for the intervening period of time. (ECF Nos. 107, 108). This Court held a Rule 65.1 conference, at which it denied Plaintiffs' request for a TRO. While Plaintiffs demonstrated at the conference "that the harm they fear would be irreparable should it occur," they had not sufficiently "established a threat of immediate harm based on the lack of evidence of actions taken by any Defendant in pursuit of the manufacturing, selling, or marketing of the allegedly patented door at issue here." (ECF No. 112 at 1). Accordingly, this Court denied the Motion for a TRO. (*Id.*).

Since then, however, the Parties have engaged in expedited discovery in advance of the upcoming preliminary injunction hearing. In those discovery disclosures, Defendant KNL produced invoices and interrogatory responses confirming that it sold four "Accused Doors" shortly after the conference during which this Court denied Plaintiffs' request for a TRO. Now, in light of this new evidence, Plaintiffs renew their request for a TRO. (ECF No. 120). This Court held another Rule 65.1 conference on September 20, 2024.

## II. STANDARD OF REVIEW

A TRO is an emergency measure. *See McGirr v. Rehme*, Case No. 16-464, 2017 WL 1426456, at *1, *2 (S.D. Ohio Apr. 21, 2017). On application for a TRO, a Court must examine

6

whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." FED. R. CIV. P. 65(b)(1)(A). A TRO is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979).

While a court is permitted to consider other factors, a TRO "is an extraordinary remedy whose purpose is to preserve the status quo" so it is of paramount importance that a plaintiff established immediacy and irreparability of harm are threshold considerations. *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citing *Proctor & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226 (6th Cir.1996)); *See Doe v. Univ. of Cincinnati*, No. 1:15-CV-600, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) (noting that the "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo") (citing *Motor Vehicle Bd. of Cal. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)).

### III. LAW & ANALYSIS

As noted above, Plaintiffs' current request for a PI is similar to Ridge's prior request but significantly narrower in scope. Previously, Ridge requested a TRO against Defendants for the following conduct:

> 1. Continuing to manufacture, advertise for sale, sell, or further contract to sell the "Infringing Door," as defined in the Complaint (ECF No. 1) or any other infringing door, in violation of United States Patent No. 9,151,084 ("Cold Chain Patent");
>
> 2. Inducing any other person or entity to manufacture, advertise for sale, or sell the Infringing Door or any other door that infringes the Cold Chain Patent;

      3. Contributing to the manufacture, advertisement for sale, or selling of the Infringing Door or any other door that infringes the Cold Chain Patent; and

      4. Tortiously interfering with Ridge's business relationships by making false claims related to the Infringing Door to Ridge's customers or business partners, including barring Defendants from falsely asserting that any aspect of the Infringing Door is "patented" by Defendants.

(ECF No. 2).

In the instant Motion, Plaintiffs seek only to temporarily restrain Defendants from "produc[ing], sell[ing], or market]ing] the "Accused Door," in violation of United States Patent No. 9,151,084 ("'084 Patent"), during the pendency of the Renewed Motion." (ECF No. 120-1). That said, for the sake of efficiency of judicial resources, this Court has lifted a significant portion of its analysis from its prior opinion, with updates where applicable based on the current facts and more limited scope of injunctive relief. (*See generally* ECF No. 77).

### A. Immediacy of Harm

In line with the above, this Court must first consider the immediacy of harm Plaintiffs may face. FED. R. CIV. P. 65(b)(1)(A). Cold Chain is the owner of the Cold Chain Patent and Ridge is the exclusive licensee of the Patent. During a tradeshow held by the National Truck Equipment Association around summer 2023, Ridge discovered Defendants' single panel roll-up door, and then learned that TTPS's website stated that its "patented" door will be market ready by the third quarter of 2023, which, at the time of the prior TRO, was quickly approaching. Although Defendants argued during the first TRO hearing that their door is different from Ridge's Cold Chain Patent door, they acknowledged that their 144 Patent Application states their patent is for a "single panel roll-up door." (ECF No. 1, Exhibits 4 & 15).

In June 2023, Ridge sent Defendants cease-and-desist letters seeking to enforce its right to the Cold Chain Patent, but at that time, Defendants did not appear to have ceased and desisted

8

either their manufacturing or advertising of a single panel roll-up door. Shortly thereafter, an attorney for KNL sent a letter to Ridge's business partner misleading them about possible royalty damages. While Defendants argued during the first TRO hearing that this letter was statutorily required for their pending 144 Patent Application, this letter had the obvious possibility of shutting down manufacturing for Ridge. Moreover, during the duration of the prior TRO and PI proceedings, TTPS continued to advertise falsely on its website that it has a "patented" single panel roll-up door, even after Ridge sent its cease-and-desist letter, and even though that statement was false. (*See* ECF No. 1 at 13–15). So, this Court granted a TRO based on these facts.

In its second TRO request, Plaintiffs provided no additional reasons for why they will suffer immediate harm without a TRO, instead resting on the fact that this Court has already ruled in Ridge's favor on this issue. This Court found that insufficient.

But now, in this third Motion for TRO, Plaintiffs come prepared with evidence of the sale of four "Accused Doors." Specifically, Defendant KNL provided the following discovery responses to Plaintiffs on September 18, 2024:

> <u>INTERROGATORY NO.14.</u> Did You manufacture, sell, or advertise for sale any units of Accused Doors from August 1, 2024 to present?
>
> **RESPONSE:** Yes, Accused Doors were sold.

*Continued on the next page.*

> INTERROGATORY NO.15. If Your answer to Interrogatory No. 14 is in the affirmative, state the number of Accused Doors you manufactured, sold, or advertised for sale, to whom you provided the Accused Doors, the price of the Accused Doors sold, and Your profit margins on the Accused Doors.
>
> > RESPONSE: TTPS used four panels in storage, which had been manufactured before the September 22, 2023 TRO was issued in this case, for single panel roll-up doors sold to existing TTPS customer Coca-Cola, because TTPS was out of the standard paneled door product that Coca-Cola preferred. That sale took place on or about September 10, 2024. The price was a total of $ 11,361.05, and the gross margin on the four doors sold, based on the average gross margin on previous sales, is estimated at 23%. Further answering, please refer to the invoices produced contemporaneously with these discovery responses.

Defendant KNL also provided the invoices in question *in camera*.

In light of clear evidence that KNL has indeed recently sold "Accused Doors" produced from Altum panels, this Court finds that Plaintiffs may suffer immediate harm if Defendants are not enjoined from manufacturing, selling, and marketing the patented roll door.

### B. Irreparability of Harm

This Court next considers the irreparability of harm Plaintiffs might face if a TRO does not issue. FED. R. CIV. P. 65(b)(1)(A). For patent cases, "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Generally, harm is not irreparable if it is fully compensable by money damages, *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992), but damages to a plaintiff's goodwill and reputation are difficult to quantify and therefore factor instead into whether a plaintiff will suffer irreparable harm, *see, e.g., Bluemile, Inc. v. YourColo, LLC*, No. 2:11-cv-497, 2011 WL

13233391, at *6 (S.D. Ohio July 8, 2011); *Eat BBQ LLC, et al. v. Walters*, No. 12-71-GFVT, 2012 WL 5835679, at *5 (E.D. Ky. Nov. 16, 2012).

As discussed above, while TTPS previously falsely advertised on its website that it has a "patented" single panel roll-up door, suggesting to customers that they could be subject to liability if they purchase Ridge's door, this no longer appears to be the case. That said, the fact that KNL's attorney sent a letter to Ridge's business partner misleading them about potential royalty damages remains relevant to Defendants' manufacturing intentions, as there is no evidence that this position has since been disclaimed. And this Court found before that Ridge has invested substantial time and economic resources in preparation for going to market with its single panel roll-up door, so that is more so true today.

This Court previously found that "Defendants' actions are taking sales away from Ridge, eroding its brand and goodwill, and hurting its market position in a small, niche market" and that "[i]f Defendants' product is introduced to the market, it will gain market share thereby impacting Ridge's market shares and relationships within the industry." (ECF No. 14 at 6). So, this Court concluded that since "the reputational damage to Ridge by Defendants' actions is not easily calculable with monetary damages[,] … money damages, therefore, would be inadequate in this case." (*Id.*). In the same way this Court again determined that a change in the status quo poses a threat of immediate harm to Plaintiffs, this Court similarly again agrees that any harm suffered by Plaintiffs as a result of further production of the door would be irreparable.

### IV. CONCLUSION

Combined, the immediate and irreparable nature of the harm Plaintiffs face necessitates court-intervention. For the reasons set forth above, this Court **GRANTS** Plaintiff's Motion for a TRO against Defendants. Specifically, Defendants are **ENJOINED** from:

11

1. Continuing to manufacture, advertise for sale, sell, or further contract to sell the "Accused Door" during the pendency of Plaintiffs' Renewed Motion for Preliminary Injunction (ECF No. 107);

2. Inducing any other person or entity to manufacture, advertise for sale, or sell the Accused Door;

3. Contributing to the manufacture, advertisement for sale, or selling of the Accused Door;

4. Tortiously interfering with Ridge's business relationships by making false claims related to the Accused Door to Ridge's customers or business partners, including barring Defendants from falsely asserting that any aspect of the Accused Door is "patented" by Defendants.

Additionally, pursuant to Rule 65(B), Plaintiff is **ORDERED** to pay a nominal bond of $1000.

**IT IS SO ORDERED.**

                                                      **ALGENON L. MARBLEY**
                                                      **UNITED STATES DISTRICT JUDGE**

**DATE:  September 20, 2024**