**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **RIDGE CORPORATION,** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | **Case No. 2:23-cv-03012** |
| | : | |
| v. | : | **Judge Algenon L. Marbley** |
| | : | |
| **KIRK NATIONAL LEASE CO.,** *et al.*, | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter is before this Court on a Renewed Motion for a Preliminary Injunction ("PI") filed by Ridge Corporation ("Ridge") and Cold Chain, LLC (collectively, "Plaintiffs") against Kirk National Lease Co. ("KNL"), Truck & Trailer Parts Solutions Inc. ("TTPS"), and Altum LLC ("Altum") (collectively, "Defendants"). For the reasons set forth below this Court **GRANTS** Plaintiffs' Motion.

## I. BACKGROUND

### A. Factual Background

Ridge, a manufacturing and engineering company, produces advanced composites for use in trucks and trailers. (ECF No. 106 ¶ 14). KNL was a customer of Ridge purchasing Ridge's products for several years. (ECF No. 56 at PageID 812, Lines 4-7). KNL and TTPS have overlapping ownership and are affiliated entities. (ECF No. 106 ¶ 5). Altum has three employees listed on its website; each listed employee is a former Ridge employee. (*Id*. ¶¶ 39–40). Plaintiffs claim that in 2018, Ridge and KNL discussed a joint venture for a single panel roll-up door but did not proceed with the joint venture. (*Id*. ¶¶ 24–29).

By license agreement with Cold Chain, dated February 15, 2023, Ridge became the exclusive licensee of a single panel overhead door under the United States Patent and Trademark Office Patent No. 9,151,084 ("'084 Patent"). (ECF No. 106 ¶¶ 15–18). The '084 Patent, initially issued to Cold Chain in 2015, provides patent protection for "[a]n article of manufacture for use as an insulated overhead door that is designed to roll open and closed in tracks, with a sheet of thermoplastic material that acts as the outer door membrane and barrier to entry, a sheet of insulating material that acts as a base insulating barrier adhered to the thermoplastic membrane." (*Id*. ¶ 20, Exhibit 1). The '084 Patent includes nineteen claims, including both independent and dependent claims. (*Id*.). Claim 1, an independent claim, is primarily at issue in this case, specifically that which is bolded below:

> An insulated overhead door that is designed to roll open and closed in tracks to cover a door opening having a top and a bottom, **the insulating overhead door having a first outermost surface, a second outermost surface opposite the first outermost surface**, a top surface, a bottom surface, a first side surface and a second side surface, **both the first outermost surface and the second outermost surface being larger than any of the top surface, bottom surface, first side surface and second side surface**, the door **comprising**:
>
> a thermoplastic membrane comprising glass fibers and having a top side corresponding to the top of the door opening and a bottom side corresponding to the bottom of the door opening, the thermoplastic membrane forming the first outermost surface of the door;
>
> a sheet of foam insulating material directly attached to the thermoplastic membrane, **the insulating material extending continuously from the top side to the bottom side of the thermoplastic membrane**, **the thermoplastic membrane and insulating material forming a panel** that is approximately the size of the door opening to be covered, a length of the panel being the distance between the top side and the bottom side, **the foam insulating material forming the second outermost surface of the door**; and
>
> wheels attached to the door allowing the door to fit into tracks to guide the opening and closing of the door,
>
> wherein the overhead door comprises only one of the panel, **the panel being flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks** having a radius of curvature ranging from about 5 inches to about 25 inches, where the track

has a first length positioned at an angle, Θ, relative to a track portion of a second length, wherein Θ ranges from about 80° to about 125°.
(*Id*. at Column 6).

Other relevant dependent claims include Claim 4, which states: "[t]he insulated overhead door of claim 1, wherein the insulating foam comprises compression gaps configured to allow the foam to more easily bend during opening and closing of the door;" Claim 9, which states: "[t]he insulated overhead door of claim 1, further comprising an additional membrane that is not the thermoplastic membrane;" and Claim 10, which states: "[t]he insulated overhead door of claim 1, the door having an R value ranging from about 14 to about 50." (*Id.* at Columns 6, 7).

In May 2023, the exclusive license agreement between Cold Chain and Ridge was amended and restated. (ECF No. 106 , Exhibit 3). Under the amended and restated license agreement, Ridge remained the exclusive licensee of the '084 Patent and was also permitted to sublicense the patent to door manufacturers. (*Id*., Exhibit 3 ¶¶ 3, 9, 14). Additionally, both Ridge and Cold Chain had the right to sue for patent infringement. (*Id*., Exhibit 3 ¶ 14). In June 2024, Ridge and Cold Chain executed an addendum to the agreement clarifying their intent to provide Ridge with "all substantial rights in the Licensed Patent to Licensee." (*Id*., Exhibit 17 ¶ 1). The addendum also amends the agreement to provide Ridge the exclusive right to sue for patent infringement. (*Id*., Exhibit 17 ¶ 2).

Based on Ridge's information and belief, after KNL and Ridge stopped pursuing their joint venture developing a single panel roll-up door, KNL began to develop a single panel roll up door with Altum. ("Defendants' door"). (ECF No. 106 ¶ 41). Altum supplies door panels to KNL and TTPS, who then sends the door panels to Transglobal[1] to add hardware and modifications. (*Id*. ¶ 43, ECF No. 1 ¶ 46). Transglobal then sends the panels back to KNL and TTPS to be sold

---

[1] Transglobal was previously a defendant in this litigation, but Ridge voluntarily dismissed it. (*See* ECF No. 39).

as single panel roll-up doors. (ECF No. 1 ¶ 46). TTPS's website also advertised that it produces a "patented single panel roll door." (ECF No. 106 ¶ 52, Exhibit 8). The website further stated that the door has a "patented single panel design" and that the door would be "Market-Ready Q3 2023." (*Id*.). The door, however, is not patented. In February 2022, KNL filed U.S. Patent Application 17/676,144 for a patent for a single panel roll-up door ("'144 Patent Application). (*Id*. ¶ 32, Exhibit 4).

In June 2023, Ridge sent a letter requesting KNL add Ridge as a joint inventor on the patent application in recognition of its role in developing the door. (*Id*. ¶ 34).  KNL, however, disputed Ridge's contribution to the door. (*Id*. ¶ 35).  As a result of discovering claims of a patented single panel roll-up door, in June 2023, Ridge sent cease-and-desist letters to KNL, TPPS, and Altum. (*Id*. 62–67). The letters explained that Ridge is the exclusive licensee of the '084 Patent, claimed the Defendants' single panel roll-up door infringes on the patent, and requested that they cease offering for sale its infringing product. (*Id*.). Ridge also offered KNL and TTPS an opportunity to sublicense its '084 Patent and come to a settlement agreement regarding its infringing product. (*Id*., Exhibit 9). Separately, (1) KNL and TTPS and (2) Altum responded to Ridge denying infringement.

On September 6, 2023, Mr. Andrew R. Barnes, KNL's patent counsel, sent a letter to Ridge's business partner, Whiting Door Corporation ("Whiting Door"), who helps manufacture Ridge's door, discussing the '144 Patent Application and the possibility of royalty damages for the sale of Ridge's door. (*Id*. ¶ 86, Exhibit 14).  Ridge claims Mr. Barnes "knew that the '144 Patent Application would need to be amended in a manner that would preclude the threatened royalty damages, and further knew that any patent issuing from the '144 Patent Application would be unenforceable due to their failure to correct the inventorship of the '144 Patent Application as

required." (*Id.* ¶ 87). On September 11, 2023, Mr. Barnes filed a response to the USPTO amending the subject matter of the claims pending in the '144 Patent Application. (*Id.* ¶ 88, Exhibit 15).

Ridge reports it has expended significant time and resources getting the '084 Patent ready for market. (*Id.* ¶ 22). Ridge was in the process of developing its business relationship with Whiting Door which controls approximately 40% of the roll-up door market. (ECF No. 31-15 at PageID 567; ECF No. 150 at PAGEID 2642, Lines 1-4).

## B. Procedural Background

On September 20, 2023, Ridge filed its Complaint (ECF No. 1) and its first request for a TRO (ECF No. 2) ("First TRO"). In its Complaint, Ridge alleges: (1) direct patent infringement against KNL, TTPS, and Transglobal; (2) patent inducement against Altum; (3) contributory infringement against Altum; (4) tortious interference with business relationships against KNL, TTPS, and Altum; and (5) false marketing against TTPS and KNL. (ECF No. 1).

After a Rule 65.1 Conference on Ridge's First TRO (ECF No. 25), this Court granted Ridge's Motion, and set a $10,000 bond from Ridge, and scheduled a preliminary injunction ("First PI") hearing (ECF No. 14). Shortly thereafter, Altum sought to add Cold Chain—the owner of the '084 Patent—to this case. (ECF No. 27). Transglobal then questioned whether venue is proper in front of this Court (ECF No. 30), in response to which Ridge voluntarily dismissed Transglobal without prejudice (ECF No. 39).

From October 3, 2023, through October 6, 2023, this Court held the First PI Hearing. This Court granted Ridge's request for a PI and denied Altum's request to join Cold Chain as a necessary party. (ECF No. 77). In so doing, this Court found that while Defendants alleged they will be substantially harmed by the injunction, a PI is nonetheless warranted because Ridge provided sufficient evidence of: (1) a strong likelihood of success on the merits as to all of its

claims except a tortious interference claim against Altum; (2) irreparable injury should a PI not issue; and (3) the importance to the public interest in enforcing patent rights. (*Id.* at 12–26). And as a fundamental matter, this Court concluded that, as the exclusive licensee with "all substantial rights" to the '084 Patent, Ridge is able to bring this suit without adding Cold Chain to the litigation. (*Id.* at 27–30).

Defendants disagreed and appealed to the Federal Circuit. (ECF No. 78). Defendants also sought a stay of this Court's imposition of the First TRO (ECF No. 79), which this Court denied for reasons similar to those in its opinion granting Ridge's request for the First PI (ECF No. 78). This Court then held in abeyance Altum's motion to dismiss all claims against it pending the outcome of Defendants' appeal. (ECF Nos. 85, 87).

Since the grant of the First PI, Ridge's first door was installed on a trailer on January 25, 2024, attended trade shows in February 2024, had its first recorded sale shipped on April 26, 2024, and advertised its door for sale in July 2024 (ECF No. 106 ¶ 76–81).

In August 2024, the Federal Circuit vacated and remanded this Court's denial of joinder and grant of PI relief without reaching the merits of this Court's PI analysis. (ECF No. 94). The Federal Circuit explained that only a "patentee"—such as an exclusive licensee with "all substantial rights"—can bring a civil suit for patent infringement, but that Ridge is not a "patentee" under its precedent. The appellate court evaluated a host of factors in so deciding—the same factors this Court applied—but emphasized that "[t]he exclusive right to make, use, and sell, as well as the nature and scope of a patentee's retained right to sue … are *the most important considerations*[.]" (ECF No. 94 at 8 (emphasis added) (citing *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1320 (Fed. Cir. 2021)). The Federal Circuit noted Cold Chain retained not only the right to sue but a right of first refusal and considerable

involvement otherwise; thus, the plain text of Cold Chain's licensing agreement made clear that "the [a]greement did not convey all substantial rights in the [relevant] patent to Ridge" so "Ridge is not a "patentee[.]" (*Id.* at 11).

After the Federal Circuit held oral argument but before the court issued its opinion, Ridge filed the addendum to its prior agreement with Cold Chain that seeks to "clarify and amend" the prior agreement to crystalize their "inten[t] that the License Agreement provide [Ridge] with all substantial rights" in the relevant patent. (ECF No. 92-1). But the Federal Circuit did not consider this evidence as it "is not properly part of the record on appeal." (ECF No. 94 at 12). That court went on, however, to explain that "a *nunc pro tunc* agreement cannot establish Ridge's status as a … patentee[.]" (*Id.* at 12 n.2).

Simultaneous to the vacatur and remand, Ridge moved to "recertify" the prior PI, arguing that the agreement addendum "removes Cold Chain from having *any* right to sue under the [relevant p]atent and, thus, entirely moots any argument related to Ridge's lack of standing." (ECF No. 93 at 2). This Court held a telephonic status conference on Ridge's Motion on August 9, 2024, during which the parties discussed the issue of joinder of Cold Chain. (ECF No. 95). Ridge agreed to add Cold Chain to this litigation by way of an amended complaint, and Cold Chain has since been added as a plaintiff, so this Court denied KNL and TTPS's joinder-related motion to dismiss. (ECF No. 105 (dismissing ECF No. 96 (joinder motion to dismiss) and granting ECF No. 102 (motion for leave to file an amended complaint adding Cold Chain)).

This Court scheduled a PI hearing to begin October 1, 2024 (the "Second PI Hearing") and ordered the parties to submit a joint stipulation of facts given the extensive fact finding at the prior hearing. (ECF No. 103). Plaintiffs filed a renewed request for a PI and a motion seeking a TRO for the intervening period of time ("Second TRO"). (ECF Nos. 107, 108). This Court held a Rule

65.1 Conference on September 6, 2024, at which it denied Plaintiffs' request for the Second TRO. While Plaintiffs demonstrated at the conference "that the harm they fear would be irreparable should it occur," they had not sufficiently "established a threat of immediate harm based on the lack of evidence of actions taken by any Defendant in pursuit of the manufacturing, selling, or marketing of the allegedly patented door at issue here." (ECF No. 112 at 1). Accordingly, this Court denied the Motion for the Second TRO. (*Id.*).

Shortly after the Court denied Plaintiffs' request for the Second TRO, Defendant KNL produced invoices and interrogatory responses confirming that it sold "Accused Doors." Plaintiffs filed a new motion for a TRO ("Third TRO"). (ECF No. 120). This Court held another Rule 65.1 conference on September 20, 2024, and granted Plaintiffs' Third TRO Motion against Defendants. This Court enjoined Defendants from:

1. Continuing to manufacture, advertise for sale, sell, or further contract to sell the "Accused Door" during the pendency of Plaintiffs' Renewed Motion for Preliminary Injunction (ECF No. 107);

2. Inducing any other person or entity to manufacture, advertise for sale, or sell the Accused Door;

3. Contributing to the manufacture, advertisement for sale, or selling of the Accused Door; and

4. Tortiously interfering with Ridge's business relationships by making false claims related to the Accused Door to Ridge's customers or business partners, including barring Defendants from falsely asserting that any aspect of the Accused Door is "patented" by Defendants.

(ECF No. 122). The instant Motion seeks to enjoin Defendants from the same acts as granted pursuant to the First PI. (ECF No. 77).

On September 25, 2024, Plaintiffs and Defendants filed Joint Stipulations of Fact with one fact: "While preserving all objections, including objections raised regarding any expert testimony and exhibits, the parties stipulate to the admissibility of the testimony that was heard in the First Preliminary Injunction Hearing, as well as the admitted exhibits from the First Preliminary Injunction Hearing." (ECF No. 127). This Court held the Second PI Hearing on October 1 through October 3, 2024.

## II.  STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure provides for injunctive relief when a party believes it will suffer immediate and irreparable injury, loss, or damage. *See* Fed. R. Civ. P. 65. A preliminary injunction is an "extraordinary remedy" intended to preserve the status quo until trial. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526 (6th Cir. 2017). A preliminary injunction should only be awarded upon a clear showing that the movant is entitled to such relief. *Southern Glazer's Disrib. Of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (internal quotation marks and citation omitted).

In determining whether to issue a preliminary injunction, the court must consider the following four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation omitted). All four

factors must be balanced rather than treated as prerequisites. *Id.* (internal quotation marks and citation omitted).

Specific to patent infringement actions, patentees seeking a preliminary injunction must make the following four-part showing: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

If the court grants a preliminary injunction, it must be stated in specific terms, describe in reasonable detail the act(s) to be restrained, and give the reasons for its issuance. Fed. R. Civ. P. 65(d). Furthermore, "[the PI] should be tailored to restrain no more than what is reasonably required to accomplish its ends." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir. 1978) (internal quotation marks and citation omitted).

### III. LAW & ANALYSIS

### A. Likelihood of Success on the Merits

A movant is not required to prove her entire case at the preliminary injunction stage, but the movant must show more than a mere possibility of success. *Certified Restoration Dry Cleaning Network,* 511 F.3d at 543 (citations and quotations omitted). Ordinarily, a movant meets its burden if it has "raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 29 (6th Cir. 2011) (quoting *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

In the Amended Complaint, Plaintiffs claim (1) infringement of the '084 Patent against KNL and TTPS ; (2) patent inducement against Altum; (3) contributory infringement against Altum; (4) tortious interference with business relationships against KNL, TTPS and Altum; and (5) false marking against KNL and TTPS. (ECF No. 106).

While a party "can show a likelihood of success on the merits of any of the claims" for this Court to issue an injunction, the decision to issue is "subject to consideration of the other factors." *Hoover Transp. Servs., Inc. v. Frye*, 77 F. App'x 776, 781 (6th Cir. 2003). The scope of the injunctions must be limited to the conduct "which has been found to have been pursued or is related to the proven unlawful conduct" and the injunction should be "sufficiently tailored to the ... district court's findings ...." *CSX Transportation, Inc. v. City of Sebree*, Kentucky, 924 F.3d 276, 287 (6th Cir. 2019) (quoting *Howe v. City of Akron*, 801 F.3d 718, 753, 755 (6th Cir. 2015)). To be thorough, this Court will address each of Plaintiffs' claims.

### 1. Direct Infringement against KNL and TTPS

First, Ridge claims direct patent infringement against KNL and TTPS. Direct patent infringement is governed by 35 U.S.C. § 271(a), which states: "Whoever without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent therefor, infringes the patent." Direct patent infringement is a strict-liability offense. *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 639 (2015).

To state a claim for direct patent infringement, a plaintiff must allege sufficient facts that the accused's product contains "elements identical or equivalent to each claimed element of the patented invention." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997); *see also Ottah v. Bracewell LLP*, No. 2022-1876, 2022 WL 16754378, at *2 (Fed. Cir. Nov. 8, 2022) ("To prove direct infringement, 'one or more claims of the patent [must] read on

11

the accused device literally or under the doctrine of equivalents.'") (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005)). Literal infringement "requires that each and every limitation set forth in a claim appear in an accused product." *Id.* (citing *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005)). Alternatively, under the doctrine of equivalents, a product that does not literally infringe upon a patent "may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Id.* (citing *DePuy Spine, Inc. v. Medtronic Sofamore Danek Inc.*, 469 F.3d 1005, 1016 (Fed. Cir. 2006)).

In a direct patent infringement action, a two-step analysis must be conducted: first, the meaning and scope of the particular claims asserted to be infringed must be interpreted properly; and second, the properly construed claims must be compared to the accused device. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1152 (Fed. Cir. 1997); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). When conducting claim construction, "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citations omitted). If a claim term is disputed, the starting place is to look at the claim language. *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("It [the claim language] is the best guide to the meaning of a disputed term."). Accordingly, while extrinsic evidence such as expert testimony, dictionaries, and learned treatises can be used in claim construction, extrinsic evidence is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (citations omitted).

12

KNL and TTPS argue there is a "substantial question" on infringement. (ECF No. 117 at 10; *see also* ECF No. 118 at 3). To demonstrate a likelihood of success, Ridge must demonstrate (1) it will likely prove infringement, and (2) the infringement claim will likely withstand challenges to the validity and enforceability of the patent. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350–51 (Fed.Cir.2001). If the opposing party raises a substantial question concerning either infringement or validity and the movant fails to show it "lacks substantial merit", the preliminary injunction should not issue. *Id*. (quoting *Genentech, Inc. v. Novo Nordisk A/S,* 108 F.3d 1361, 1364 (Fed. Cir. 1997); *see also Anton/Bauer, Inc. v. PAG, Ltd.,* 329 F.3d 1343, 1348 (Fed.Cir.2003).

KNL and TTPS argue that Defendants' door does not directly infringe the '084 Patent because it does not: (1) include a certain level of insulating qualities; and (2) have a second outermost surface made of a foam material.

### a. Insulation

First, this Court must address the use of the terms "insulating" and "insulated." The '084 Patent states "[t]he invention relates generally to the field of overhead insulated doors and, more specifically, to an insulated overhead door that is designed to roll open and closed in tracks." (ECF No. 106, Exhibit 1 at Column 1). The patent "addresses some of the current problems with existing overhead door technology, and in particular, the problems associated with insulated doors used in the cold storage industry, such as on delivery trucks for cold storage distribution." (*Id*. at Column 2). Claim 1 of the patent requires:

> a sheet of foam insulating material directly attached to the thermoplastic membrane, the insulating material extending continuously from the top side to the bottom side of the thermoplastic membrane, the thermoplastic membrane and insulating material forming a panel that is approximately the size of the door opening to be covered, a length of the panel being the distance between the top side

13

and the bottom side, the foam insulating material forming the second outermost surface of the door.

(*Id*., Exhibit 1 at Column 1 Lines 32-41). Further, the Detailed Description states that "[e]xamples of insulating materials include foam." (*Id*., Exhibit 1 at Column 4, Line 9). Examples of "suitable foams" are "closed cell foams, such as . . . polyethylene foams." (*Id*., Exhibit 1 at Column 4, Lines 9–20).

KNL and TTPS  do not argue the use of polyethylene foam ("PET foam") but instead dispute whether the foam used is "insulating". KNL and TTPS  argue the "'084 [P]atent equates "insulating" with protecting an interior area from heat." (ECF No. 158 at 3). To support its argument, KNL and TTPS  identify sections in the '084 Patent's Background referring to cold storage and stating, "the industry has developed and used doors with increasing insulating qualities (R-value)." (*Id*.; ECF No. 106, Exhibit 1 at Column 1, Lines 11–18).

Indeed, the testimony at the hearing established that the "R-value" is a measure of resistance to heat (ECF No. 152, PageID# 3090). Nonetheless, as this Court found in granting the First PI, the language in the '084 Patent does not require a particular R-value. The Detailed Description of the patent makes clear that R-value references are examples, not requirements stating  "Example R values for the door can range from about 14 to about 50. The R value can be increased by increasing the thickness of the door and the amount of EVA foam that is used."(*Id*. at Column 5, Lines 55-58). Similarly, Defendants' door uses a foam, PET foam, which R-value may be increased depending on the thickness of the foam. As Plaintiffs argue, "varying levels of low to high insulation is but one of many possible advantages of the roll-up  door products covered under the '084 Patent." (ECF No. 123 at 4).  Since the patent does not require a particular R-value or indicate a particular level of insulation required, this Court finds this argument unpersuasive.

KNL and TTPS also argue "all of the claims of the '084 patent require an 'insulated' door using 'foam insulating material'" and that "it is clear that the concept embodied in the terms is that the door must effectively insulate the contents of the interior of the truck from heat." (ECF No. 117 at PageID 2364, 2365). KNL and TTPS emphasize the number of times the patent uses the word "insulated" or "insulating." (ECF No. 158 at 2–3). They claim the Defendants' door is not intended to be an insulated door but instead the foam material used is intended to be a spacer providing thickness between the outer layers of the door. (ECF No. 117 at PageID 2364, 2365).

While the foam material used in the Defendants' door may be intended to be a spacer providing thickness between outer layers of the door, it is still a material listed in the '084 Patent as an insulating material. (ECF No. 106, Exhibit 1 at Column 4, Line 9). Whether insulation was intended when creating the Defendants' door does not change the construction of the door.

### b. *Second Outermost Surface*

Next, this Court must interpret the meaning of the phrase "second outermost surface." This Court finds the figures and specifications within the '084 Patent less significant to the Court's analysis than the claims themselves. *See Star Tech. Grp., Inc. v. Testerion, Inc.*, No. 99-1168, 1999 WL 693829, at *6 (Fed. Cir. Sep. 7, 1999) ("It is fundamental that infringement is determined by comparing the accused device to the claims, rather than comparing the accused device to the figures of the patent specification.").

KNL and TTPS argue that "outermost" should be given its ordinary meaning because the specification of the '084 Patent does not indicate an intention to define "outermost" differently than in its ordinary sense. (ECF No. 117 at 7). KNL and TTPS argue that when "outermost" is given the meaning "farthest out," Defendants' door would not infringe on the '084 Patent because "all of the claims of the '084 patent require that the 'second outermost surface of the

15

door,' meaning the farthest out surface of the door, consist of foam material. The outermost surface of the [Defendants' door] is a layer of film, rather than a foam material." (*Id*. at 9).

This Court found in granting the First PI that Claim 1 in the '084 Patent specifically defines the "second outermost surface": it is the surface "opposite the first outermost surface," it is "larger than any of the top surface, bottom surface, first side surface and second side surface," and it is made of a "foam insulating material." (*See* ECF No. 106, Exhibit 1, Claim 1). KNL and TTPS rely on the testimony of Plaintiffs' witness, Richard Sharpe, from the First PI Hearing during which "Mr. Sharpe agreed that the terms 'outermost' and 'farthest out' are 'synonymous.'" (ECF No. 117 at PageID 2366). Since the language of Claim 1 describes "second outermost surface," this Court still does not find Defendants' reliance on the "ordinary meaning" of "outermost" being "farthest out" persuasive.

After interpreting the meaning and scope of the claims of the '084 Patent, this Court next compares the claims construed in the '084 Patent to Defendants' door. In granting the First PI, this Court thoroughly analyzed P70 and the photographs of Defendants' door in Defense Exhibits 43-46 against the '084 Patent. The analysis remains unchanged by the arguments raised by KNL and TTPS. Accordingly, this Court finds Ridge established a strong likelihood that it would be successful on the merits of its direct infringement claim against KNL and TTPS, under literal infringement, or, at the least, the doctrine of equivalents.

### 2. *False Marking against KNL and TTPS*

Ridge also claims false marking against KNL and TTPS. A claim for false marking of a patent is governed by 35 U.S.C. § 292, which states: "Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public . . . shall be

16

fined . . . . A person who has suffered a competitive injury as a result of a violation of this section may file a civil action . . . for recovery of damages . . . ."

Ridge claims TTPS advertised to prospective customers that Defendants' door was "patented" when it, in fact, is not. During the First PI Hearing, Defendants' witness conceded that TTPS's website and marketing emails falsely marked Defendants' door as "patented." (*See* ECF No. 57 at PageID 1010, Lines 7-21). While KNL and TTPS argued this false marking claim as moot during the First PI Hearing, Defendants have not responded to the likelihood of success on the merits of the false marking claim in their responses to Plaintiffs' Renewed Motion for a PI. This Court finds Ridge established a strong likelihood that it would be successful on the merits of its false marking claim.

### 3. *Patent Inducement and Contributory Infringement against Altum*

Ridge next claims indirect patent infringement against Altum, specifically patent inducement and contributory infringement. Patent inducement is governed by 35 U.S.C. § 271(b), which states: "Whoever actively induces infringement of a patent shall be liable as an infringer." Liability for inducing infringement attaches only if the defendant knew of the patent and knew that the induced acts constituted patent infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011). Knowledge is attributable to a defendant who acts with willful blindness. *Id*. at 766–67.

Contributory inducement is governed by 35 U.S.C. § 271(c). To state a claim for contributory infringement, a plaintiff must show that: (1) defendants knew the alleged infringing products are material to practicing the invention and have no substantial non-infringing uses; (2) defendants knew that the alleged infringing products were especially made or especially adapted to infringe the patents at issue; and (3) a third party used the alleged infringing products to

17

directly infringe the patents at issue. *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 840 (N.D. Ohio 2021) (citation omitted).

For both patent inducement and contributory infringement claims, a plaintiff must first prove direct infringement. *Parallel Networks Licensing, LLC v. Microsoft Corp.*, 777 F. App'x 489, 493 (Fed. Cir. 2019) ("To establish indirect infringement, a patentee must show that the defendant's actions led to direct infringement.") (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004)).

Ridge maintains the same claims provided during the First PI: Altum (1) knew about the '084 Patent because Ridge sent Altum a cease-and-desist letter regarding the patent; (2) induced and contributed to infringement by supplying KNL/TTPS with the sandwich panels for the infringing door and instructing KNL/TTPS on how to cut grooves into the panels to create the infringing door; and (3) had the expertise to induce infringement given that all three of its employees are former Ridge employees and one Altum employee worked on Ridge and KNL's joint venture for the single panel-roll up door.

Altum has provided similar arguments used in opposition of the First PI. Altum argues Plaintiffs have not shown a substantial likelihood of success on the merits for literal infringement claims because Defendants' door does not satisfy the limitations for insulation; and the '084 Patent disavowed doors that are made from inflexible sandwich panels.

### a. Insulation

First, Altum argues that Defendants' door does not infringe the '084 Patent because of the low insulation qualities. This argument fails for the same reasons KNL and TTPS's insulation argument fails.

Claim 1 of the patent includes "a sheet of foam insulating material." (ECF No. 106, Exhibit 1 at Column 1, Lines 32-41). The Detailed Description states that "[e]xamples of insulating materials include foam." (*Id.*, Exhibit 1 at Column 4, Line 9). Additionally, the Detailed Description states examples of "suitable foams" are "closed cell foams, such as . . . [PET] foams."

Altum admits that the foam used by Defendants, PET foam, "can be insulating, but its insulating qualities depend on the thickness of the foam." (ECF No. 159 at 14). Altum argues the testimony offered during the Second PI Hearing by Altum's witness, Dominic Grandominico, was clear in establishing "the thickness of the material matters for the material to be insulating" and that materials in Defendants' door do not have the required thickness to be insulating. (ECF No. 162 at 7-8). During the hearing, this Court also heard testimony from Dr. Paul Kladitis who explained the relevance of thickness in measuring the thermal conductivity of the relevant materials. (ECF 151 at PAGEID 2971).

In its Reply to Altum, Plaintiffs explain that a key aspect of the invention is to eliminate the horizontal seams used by the prior art. (ECF No. 163 at 4). Plaintiffs also claim that using the term "insulating" rather than "R-value" in the independent claims indicates that "R-value does not carry the same meaning as insulating." (*Id.*).

The '084 Patent references both R-value and thickness in connection with insulation. It contemplates the thickness of foam by including in the Detailed Description that "R Value can be increased by increasing the thickness of the door and the amount of EVA foam that is used." (ECF No. 160, Exhibit 1 at Column 5, Lines 56-58). This thickness, however, is not required by the claims of the '084 Patent which discuss a "sheet of foam insulating material", without

requiring any particularities about the insulation provided by the material (i.e. thickness). (ECF No. 160, Exhibit 1 at Column 1, Lines 32-41).

Altum also notes that the Defendants door uses PET foam and claims that "[f]or insulated doors, manufacturers use polyurethane foam." (ECF No. 159 at 14). This Court notes that the Detailed Description provides examples of insulating materials, including polyurethane foams which is listed as an additional foam that "can be used." (ECF No. 160, Exhibit 1 at Column 4 lines 16-20). It also lists PET foams as a "suitable closed cell foam." (*Id*.).

The patent does not indicate a requirement for any certain level of R-value, thermal conductivity, or thickness of the material used. Thus, this Court finds that Altum's low-insulation argument fails.

### b. *Disavowal of inflexible and sandwiched construction*

As for Altum's argument that the '084 Patent disavowed doors that are made from inflexible sandwich panels, Altum is effectively making a prosecution estoppel defense. The doctrine of prosecution estoppel "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)). For prosecution estoppel to apply, a disavowal must be clear and unmistakable. *Id*.

Altum argues that the express limitation "the panel being flexible along the entire length of the panel" disavows inflexible materials. Because of its rigidity, KNL must route grooves into the panel that create hinges necessary for the door to be able to traverse around a curved track. Similarly, the '084 Patent contains a claim for compression gaps, specifically Claim 4, which

states: "The insulated overhead door of claim 1, wherein the insulating foam comprises compression gaps configured to allow the foam to more easily bend during opening and closing of the door." (ECF No. 106, Exhibit 1, Claim 4 at Column 6). The fact that Claim 4 is a dependent claim does not change this Court's analysis since Claim 1 uses the open language "comprising," which is "well understood to mean 'including but not limited to.'" *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007).

Altum argues that "the panel being flexible along the entire length of the panel" adds a limitation that means "the panel of the Cold Chain Door is made from material that is innately flexible on its own at every point along the panel". (ECF No. 118 at 9-10). Altum explains "the word comprising in the challenged claims 'cannot restore' the features Cold Chain explicitly disavowed—inflexible material and sandwich panels." (*Id.*). Plaintiffs respond that Altum "create[s] a misperception that the panel must be 'innately flexible.'" (ECF No. 163 at 5).

"Indeed, the word comprising, while permitting additional elements not required by a claim, does not remove the limitations that are present." *Raytheon Co. v. Sony Corp.*, 727 F. App'x 662, 673 (Fed. Cir. 2018). The panel in the patent is "flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks having a radius of curvature ranging from about 5 inches to about 25 inches." (ECF No. 106, Exhibit 1, Claim 1, Col. 6 ln. 45-48.) This does not limit the use of materials that achieve such flexibility with certain additions, which are considered in Claim 4.

With respect to Altum's argument that Cold Chain disclaimed a door with sandwiched construction (*i.e.* a "three-layer, sandwich panel"), this Court is not persuaded. As this Court found in granting the First PI, Claim 1 uses the open language "comprising" rather than "consisting." *See id.* As such, the '084 Patent does not say the door must only have two layers;

rather, it says the door needs to have at least two layers (i.e. the first outermost layer made of thermoplastic and the second outermost layer made of a foam insulating material). (*See* ECF No. 1, Exhibit 1, Claim 1 at Column 6). Altum argues Claim 9 does not support a sandwich panel made from a layer of foam sandwiched between two thermoplastic membranes. (*See* ECF No. 118, at PageID 2389).  This argument is unpersuasive as the '084 Patent also includes Claim 9 allowing for an additional membrane that is not the thermoplastic membrane discussed in Claim 1. (*See* ECF No. 106, Exhibit 1, Claim 9 at Column 7).  Therefore, this Court does not find Altum has a prosecution estoppel defense.

### c.  *Validity*

Altum additionally argues the reading of the claim language as including a sandwich panel construction and allowing grooves renders the '084 Patent invalid. When possible, claims should be construed to sustain their validity without "judicial rewriting of claims to preserve validity." *Rhine v. Casio, Inc*., 183 F.3d 1342, 1345 (Fed. Cir. 1999).  If sustaining the validity is not possible "and the claim language reads on the prior art, the claims will be construed in accordance with their language and then held invalid." *Xerox Corp. v. 3Com Corp*., 61 F. App'x 680, 683 (Fed. Cir. 2003).

A patent is presumed to be valid, 35 U.S.C. § 282, and the burden is on Altum to show invalidity by clear and convincing evidence.  *AK Steel Corp. v. Sollac & Ugine*, 234 F. Supp. 2d 711, 716 (S.D. Ohio 2002), aff'd, 344 F.3d 1234 (Fed. Cir. 2003).

Altum argues the '084 Patent is rendered invalid because the  United States Patent No. 5,915,445 ("Rauenbusch Patent") is described as a "single panel overhead door 10 comprising a core member 13 between a pair of outer face layers 11, 12 . . . having depressions 14 to facilitate the bending of the door 10." (*See* ECF No. 118, at PageID 2391).  This argument is

unpersuasive, "Cold Chain specifically explained that '[t]he sandwich structures of Rauenbusch are not the same as applicant's claimed structure . . . For example, the Rauenbusch sandwich structure do not include a foam insulating material forming the second outermost surface of the door.'" (*See* ECF No. 118, at PageID 2389).  Altum failed to show by clear and convincing evidence that the sandwich panel construction with grooves and a foam insulating material forming the second outermost surface of the door is rendered invalid by Rauenbusch.

### 4. *Indirect patent infringement*

After finding direct infringement, this Court turns to the indirect patent infringement claims. As this Court found in the First PI, the elements of patent inducement and contributory infringement are met in this case. Altum has not presented new arguments to find otherwise. Altum knew about the '084 Patent from Ridge's cease-and-desist letter. Additionally, Altum knew that instructing KNL and TTPS on how to cut grooves into the panels to create the infringing door induced infringement, especially since Altum is made up of engineers, whereas KNL and TTPS  are not. Furthermore, the panels and instruction Altum provide to KNL and TTPS are material to Defendants' door and have no substantial non-infringing uses. Moreover, Altum knew Defendants' door was especially made to infringe the '084 Patent since Altum is made up of former Ridge employees and one Altum employee worked on Ridge and KNL's joint venture for the single panel roll-up door. Finally, KNL and TTPS  used Altum's panels and instruction directly to infringe the '084 Patent and sell single panel roll-up doors.

Accordingly, this Court finds Ridge established a strong likelihood that it would be successful on the merits of its indirect infringement claims against Altum.

5.   *Tortious Interference with Business Relationships against Defendants*

Ridge next claims tortious interference with business relationships against Defendants. In Ohio, the elements of tortious interference with a business relationship are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Westfall Auto Sales, LLC v. Zurich Am. Ins. Co.*, No. 21-3126, 2021 WL 5298540, at * 4 (6th Cir. Nov. 15, 2021) (citation omitted).

Ridge claimed for the First PI, and again in this renewed Motion, that KNL and TTPS tortiously interfered with Ridge's business relationship with Whiting Door by sending a letter threatening royalty damages. Ridge asserts that after Whiting Door received the letter, Whiting Door halted all business with Ridge. (ECF No. 107 at 8).

KNL and TTPS  argue the same preemption argument from the First PI. They argue the letter sent to Whiting Door was a notice complying with federal patent law that requires a business to notify others of pending patent applications to lay the groundwork for future claims of pre-issuance royalties. (ECF No. 117 at 11).

This Court remains unconvinced by KNL and TTPS's arguments. Mr. Jeff Phlipot, Chief Executive Officer of KNL and President of TTPS, testified at the First PI Hearing that he contacted his patent lawyer after learning that Ridge might be working with Whiting Door on a single panel roll-up door and worked with his patent lawyer to send the letter to Whiting Door threatening royalty damages. (*See* ECF No. 57 at PageID 994-995). As such, it appears the letter was specifically targeting Ridge and its partnership with Whiting Door, rather than being a generic, form-letter simply complying with patent law.

24

Additionally, at the time KNL/TTPS sent the letter to Whiting Door, KNL/TTPS knew Whiting Door was the leading door manufacturer in the industry. (*See* DE14). Furthermore, KNL/TTPS knew the letter was an "empty threat" since KNL/TPPS were working on substantial amendments to the '144 Patent Application at the time the letter was sent, which precludes the possibility of receiving royalty damages from the date of publication. (*See* ECF No. 56 at PageID 871, Lines 10-20). Accordingly, this Court finds all elements of tortious interference with a business relationship have been satisfied with respect to KNL and TTPS .

Ridge also claims Altum tortiously interfered with Ridge's joint venture with KNL for a single panel roll-up door. This Court finds Altum knew of Ridge's relationship with KNL/TTPS given that Altum is made up of all former Ridge employees. Based on the evidence presented, it is unclear to this Court, however, whether Altum intentionally interfered with the joint venture or whether KNL sought out Altum. Therefore, this Court finds Ridge did not establish a strong likelihood that it would be successful on the merits of its tortious interference with a business relationship claim with respect to Altum.

Since Ridge established a strong likelihood that it would be successful on the merits of all claims against Defendants (minus tortious interference with a business relationship against Altum), this factor of the PI test weighs in favor of granting the PI.

### B.  Irreparable Injury

The next factor of the PI analysis is whether the movant would suffer irreparable injury without the injunction. Generally speaking, injury is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). For patent cases, however, "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on

such terms as the court deems reasonable." 35 U.S.C. § 283. Although there is no longer a presumption of irreparable harm upon a showing of patent infringement, courts should not ignore "the fundamental nature of patents as property rights granting the owner the right to exclude." *Robert Bosch LLC v. Pulon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

Damages to a plaintiff's goodwill and reputation are difficult to quantify but can amount to irreparable harm. *See, e.g., Bluemile, Inc. v. YourColo, LLC*, No. 2:11-cv-497, 2011 WL 13233391, at *6 (S.D. Ohio July 8, 2011); *Eat BBQ LLC, et al. v. Walters*, No. 12-71-GFVT, 2012 WL 5835679, at *5 (E.D. Ky. Nov. 16, 2012). Additionally, loss of market share, price erosion, and damages to customer relationships can amount to irreparable harm. *See, e.g., Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014) (finding irreparable harm where any sale by competitor was lost customer for patent owner and patent owner was likely to lose significant market share as well as customers); *Celis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) (finding irreparable harm where patentee would have lost value of its patent as well as suffered price erosion, damage to ongoing customer relationships, and loss of customer goodwill through later effort to restore original price); *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (finding irreparable harm where alleged infringement would cause price erosion and reduction in market share); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (finding irreparable harm where patentee would lose revenues and goodwill, and would be required to reduce its research and development activities).

Here, Ridge claims Defendants are eroding Ridge's brand, goodwill, reputation, business opportunities, market position, and price, especially in what Ridge claims is a "niche market." Defendants argue any injury to Ridge is a past harm and purely speculative. (ECF No. 117 at 10–

26

12; ECF No. 158 at 13). Defendants further argue the roll-up door market is not a niche market and any alleged injury to Ridge is fully compensable by money damages. (ECF No. 117 at 13–14; ECF No. 158 at 14; ECF No. 159 at 17–18).

The false advertisement that Defendants have a "patented" single panel roll-up door, suggesting to customers that they could be subject to liability if they purchase Ridge's door, no longer appears to be at issue. KNL and TTPS argue that the company remedied its mistake as to patented vs. patent pending by telling all of its customers for single panel roll-up doors that no KNL patent had been issued on the door. (ECF No. 117 at PageID 2370.  Nonetheless, as this Court noted when granting the Third TRO, Mr. Barnes, sent a letter to Ridge's business partner misleading them about potential royalty damages remains relevant to Defendants' manufacturing intentions. Defendants have not provided evidence that this position has since been disclaimed.

This Court previously found that "Defendants' actions are taking sales away from Ridge, eroding its brand and goodwill, and hurting its market position in a small, niche market" and that "[i]f Defendants' product is introduced to the market, it will gain market share thereby impacting Ridge's market shares and relationships within the industry." (ECF No. 14 at 6). Any harm suffered by Plaintiffs as a result of further production of the door would be irreparable. On September 18, 2024, Defendant KNL provided discovery responses admitting to the sale of the "Accused Doors" to Coca-Cola. (*See* ECF No. 122 at PageID 2413). As a result, this Court granted the Third TRO, finding "Combined, the immediate and irreparable nature of the harm Plaintiffs face necessitates court-intervention." (*Id*. at PageID 2414).  This harm is more than a speculative past harm and is irreparable. Accordingly, this factor weighs in favor of granting the PI.

## C. Substantial Harm to Others

The next factor of the PI analysis is whether issuance of the injunction would cause substantial harm to others. KNL and TTPS argued in opposition to the First PI that their growing, thriving business selling a successful product to the trucking industry will suffer substantial harm if a PI is imposed. Altum, in response to the First PI motion, alleges it will be forced to lay off most of its employees and will lose substantial revenue if a PI is imposed. Altum also argues, when weighing hardships, this Court should consider the fact that Ridge only brought this lawsuit as retaliation for KNL not listing Ridge as a co-inventor on the '144 Patent Application. Ridge claims any harm to Defendants should not be given weight since they have "unclean hands."

This Court is not concerned with Ridge's motivation for this lawsuit or the alleged co-inventorship claims. Defendants' losses, however, are a result of their own calculated risk in selling a single panel roll-up door with knowledge of the '084 Patent. *See Celsis In Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) (finding substantial harm to competitors did not weigh against granting a PI when competitor's losses were a result of its own calculated risk in selling a product with knowledge of the patent). Nevertheless, when considering the substantial harm alleged by Defendants and the irreparable harm to Ridge, this Court finds this factor is neutral to this Court's overall PI analysis.

## D. Public Interest

The last factor of the PI analysis is whether the public interest would be served by the issuance of the injunction. Ridge argues the public has an interest in intellectual property being protected. Altum argues that the public interest is in permitting free competition for ideas that are part of the public domain. This Court finds the public's current access to a single panel roll-up

door and freedom of competition does not override the recognized public interest to enforce patent rights, especially considering Defendants did not engage in the required quality assurance testing for its door. *See PPG Industries, Inc. v. Guardian Industries Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996) (discussing "the strong public policy favoring the enforcement of patent rights."). Accordingly, this factor weighs in favor of granting a PI.

When balancing the four factors for a PI, this Court finds the factors weigh in favor of granting a PI. Therefore, this Court **GRANTS** Plaintiff's Motion for a PI against KNL, TTPS, and Altum (ECF No. 2).

### E. Bond

This Court must next consider the bond requirement in Rule 65(c), which states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Roth v. Bank of the Commonwealth*, 583 F.2d 527, 538-39 (6th Cir. 1978) (noting the bond requirement is discretionary, but the district court must expressly consider the question).

In connection with the First PI, this Court found a $165,000 bond appropriate, which is the approximate total amount KNL and TTPS profited with the sale of its door between June 2022 and September 2023. (ECF No. 77 at 26.). The bond was posted on November 8, 2023, and was not returned. During the Second PI Hearing, Altum requested for the bond to be doubled to approximately $300,000. This Court responded it will not double the bond absent any compelling evidence. This Court has not received such compelling evidence for this Second PI Hearing. Accordingly, the bond will remain at $165,000. This Court will address separately the pending

Motion to Collect Bond (ECF No. 100) and Motion to Recoup a Portion of its Damages (ECF No. 101).

## IV. PENDING MOTIONS TO EXCLUDE TESTIMONY

Before the Second PI Hearing, Altum filed a Motion in Limine to Exclude the Testimony of Richard Sharpe. (ECF No. 129). Altum argued Mr. Sharpe is "a patent attorney with no skill in the pertinent art" thus he "is not qualified to offer expert testimony in this case." (*Id*. at 2). This motion was held in abeyance and this Court noted "unless Plaintiffs establish that Mr. Sharpe is "also a qualified technical expert, his testimony on these kinds of technical issues is improper and thus inadmissible." (ECF No. 145 at 9).

As the hearing has already occurred, at which Mr. Sharpe testified, the motion (ECF No. 129) is **DENIED AS MOOT**. This Court further finds Mr. Sharpe's testimony admissible because he did not testify on the ultimate issue of infringement. *See Markman v. Westview Instruments, Inc*., 52 F.3d 967, 991 (Fed. Cir. 1995) (Mayer, J., concurring) ("The judge can even advert to the testimony of patent law experts—that is, patent lawyers—for advice on the interpretation of claims."). Mr. Sharpe testified to "generally how someone interprets what a patent says under patent law standards" (ECF No. 150 at 162 lines 7-9).

During the Second PI Hearing, Defendants also objected to testimony offered by Peter Wachtell, one of the named inventors on the '084 Patent. Mr. Wachtell provided testimony regarding what was meant by using certain terms in the patent. (ECF No. 153 at 2). Following the hearing, Altum filed a Motion to Exclude Testimony from Peter Wachtell (ECF No. 153). Altum argues the Federal Circuit has explained that an inventor's testimony "cannot be relied on to change the meaning of the claims" and "the subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim." *Howmedica*

*Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008) (quoting *Markman*, 52 F.3d at 985).

Plaintiffs argue that, rather than being an inventor offering subjective intent of the meaning of terms, "[Mr.] Wachtell is one skilled in the art who testified about the meaning of the term 'insulating' in the ['084] Patent." (ECF No. 155). Mr. Wachtell, however, testified specifically to intent. For example, Mr. Wachtell answered questions including: "What aspects of the truck and trailer vehicles that were in the industry did you intend for the '084 patent to cover doors for;" "was there any intention to limit it to certain segments or certain types of trucks;" "what type of trucks were you guys building doors for;" and "In your view, then, would the '084 patent's independent claims apply to dry freight doors? [Answer:] Yes. We absolutely intended that to be the case." (ECF No. 150 at 44–46).

Mr. Wachtell's testimony included evidence of the inventor's intent. This Court did not rely on Mr. Wachtell's intent in reaching its decision and has given "no probative weight" to the inventor's intent regarding the terms. Accordingly, the Motion to Exclude Testimony from Peter Wachtell (ECF No. 153) is **GRANTED in part**. This Court gave all witnesses testimony the weight this Court believed it deserved.

## V. CONCLUSION

As stated above, when balancing the four factors for a PI, this Court finds the factors weigh in favor of granting a PI. Therefore, Plaintiffs' Motion for a PI against KNL, TTPS, and Altum (ECF No. 107) is **GRANTED**. Specifically, Defendants are **ENJOINED** from the following:

1. Continuing to manufacture, advertise for sale, sell, or further contract to sell the "Accused Door," as defined in the Amended Complaint (ECF No. 106), in violation of United States Patent No. 9,151,084 ("'084 Patent");

2. Inducing any other person or entity to manufacture, advertise for sale, or sell the Accused Door;

3. Contributing to the manufacture, advertisement for sale, or selling of the Accused Door;

4. Tortiously interfering with Ridge's business relationships by making false claims related to the Accused Door to Ridge's customers or business partners, including barring Defendants from falsely asserting that any aspect of the Accused Door is "patented" by Defendants.

5. The bond of $165,000 for the first Preliminary Injunction shall remain in place.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

DATE:  November 18, 2024