**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RIDGE CORPORATION, *et al.*,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:23-cv-03012** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **KIRK NATIONAL LEASE CO., *et al.*,** | : | **Magistrate Judge Courter S. Shimeall** |
| | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This patent-infringement action is before this Court on Defendant Altum LLC's ("Altum") Motion to Dismiss the First Amended Complaint (ECF No. 106) filed by Ridge Corporation ("Ridge") and Cold Chain, LLC (collectively, "Plaintiffs"). (ECF No. 114). For the reasons set forth below, this Court **GRANTS** Altum's Motion to Dismiss.

## I. BACKGROUND

The facts of this case are set forth at length in this Court's November 18, 2024, Opinion & Order. (ECF No. 167). This Court repeats and supplements those facts as relevant below.

Ridge, a manufacturing and engineering company, produces advanced composites for use in trucks and trailers. (ECF No. 106 ¶ 14). KNL, a former Ridge customer, purchased Ridge's products for several years. (ECF No. 56 at 50:4–7). KNL and TTPS have overlapping ownership and are affiliated entities. (ECF No. 106 ¶ 5). Altum has three employees listed on its website; each listed employee is a former Ridge employee. (*Id.* ¶¶ 39–40). Plaintiffs claim that in 2018, Ridge and KNL discussed a joint venture for a single panel roll-up door but did not proceed with the joint venture. (*Id.* ¶¶ 24–29).

By license agreement with Cold Chain, dated February 15, 2023, Ridge became the exclusive licensee of a single panel overhead door under the United States Patent and Trademark Office ("USPTO") Patent No. 9,151,084 ("'084 Patent"). (ECF No. 106 ¶¶ 15–18). The '084 Patent, initially issued to Cold Chain in 2015, provides patent protection for "[a]n article of manufacture for use as an insulated overhead door that is designed to roll open and closed in tracks, with a sheet of thermoplastic material that acts as the outer door membrane and barrier to entry, a sheet of insulating material that acts as a base insulating barrier adhered to the thermoplastic membrane." (*Id.* ¶ 20, ECF No. 106-1, Exhibit 1). The '084 Patent includes nineteen claims, including both independent and dependent claims. (ECF No. 106-1, Exhibit 1). Claim 1, an independent claim, is primarily at issue in this case, specifically that which is bolded below:

> **An insulated overhead door** that is designed to roll open and closed in tracks to cover a door opening having a top and a bottom, **the insulating overhead door having a first outermost surface, a second outermost surface opposite the first outermost surface**, a top surface, a bottom surface, a first side surface and a second side surface, **both the first outermost surface and the second outermost surface being larger than any of the top surface, bottom surface, first side surface and second side surface**, the door **comprising**:
>
> a thermoplastic membrane comprising glass fibers and having a top side corresponding to the top of the door opening and a bottom side corresponding to the bottom of the door opening, the thermoplastic membrane forming the first outermost surface of the door;
>
> a sheet of foam insulating material directly attached to the thermoplastic membrane, **the insulating material extending continuously from the top side to the bottom side of the thermoplastic membrane, the thermoplastic membrane and insulating material forming a panel** that is approximately the size of the door opening to be covered, a length of the panel being the distance between the top side and the bottom side, **the foam insulating material forming the second outermost surface of the door**; and
>
> wheels attached to the door allowing the door to fit into tracks to guide the opening and closing of the door,
>
> wherein the overhead door comprises only one of the panel, **the panel being flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks** having a radius of curvature ranging from about 5 inches to about 25 inches, where the track

> has a first length positioned at an angle, Θ, relative to a track portion of a second length, wherein Θ ranges from about 80° to about 125°.

(*Id.*).

Other relevant dependent claims include Claim 4, which states: "[t]he insulated overhead door of claim 1, wherein the insulating foam comprises compression gaps configured to allow the foam to more easily bend during opening and closing of the door;" Claim 9, which states: "[t]he insulated overhead door of claim 1, further comprising an additional membrane that is not the thermoplastic membrane;" and Claim 10, which states: "[t]he insulated overhead door of claim 1, the door having an R value ranging from about 14 to about 50." (*Id.*).

It is also of note that prior to the USPTO issuing the '084 Patent in 2015, Cold Chain's patent application was rejected multiple times based on prior art. (ECF Nos. 31-3; 31-6; 31-9; 31-11). Thus, during the prosecution of the '084 Patent, Cold Chain repeatedly distinguished its patent from existing patents, such as the Rauenbusch Patent (U.S. Patent No. 5,915,445). Specifically, Cold Chain made the following distinctions regarding the '084 Patent and existing patents:

(1) Unlike the '084 Patent, "the door of Rauenbusch is a plurality of rigid panels hinged together and not a single panel being sufficiently flexible to traverse a curved track." (ECF No. 31-4 at 2).

(2) "The claimed overhead door of the present disclosure is clearly different from the doors taught by Rauenbusch, which include alternating rigid panels and flexible strips, the flexible strips allowing the alticulating rigid panels to traverse a curved track." (ECF No. 31-8 at 7).

(3) "[I]t is clear from the specification that it is the flexibility of both the thermoplastic membrane 4 and the foam composite from which the panel is made that allow the panel to flex to traverse the tracks, rather than relying on multiple rigid hinged

sections. Because the foam and liner chosen for the panel are designed to flex, the flexibility is a property of the material chosen for the panel. It is the material itself that flexes, rather than bending at hinges, as would be the case with a rigid panel and hinge structure." (ECF No. 31-10 at 9).

(4) "Because the doors of Rauenbusch include alternating rigid panels, they are not the same as the claimed overhead doors comprising only one panel, the panel being flexible along the entire length of the panel, as recited in the claims." (*Id.* at 13).

(5) "The sandwich structures of Rauenbusch are not the same as applicants claimed structure. For example, the Rauenbusch sandwich structures do not include a foam insulating material forming the second outermost surface of the door, as recited in claims 1, 16 and 24 and the claims dependent thereon." (ECF No. 31-12 at 11).

(6) The Cold Chain Patent involves a panel comprised of "only two major layers wherein the thermoplastic membrane is the first major layer and the insulating material is the second major layer." (*Id.*at 9).

After four rounds of rejection and amendments, the USPTO issued Cold Chain a patent on October 6, 2015. (ECF Nos. 106 ¶ 15; 31-13).

In May 2023, the exclusive license agreement between Cold Chain and Ridge was amended and restated. (ECF No. 106-1, Exhibit 3). Under the amended and restated license agreement, Ridge remained the exclusive licensee of the '084 Patent and was also permitted to sublicense the patent to door manufacturers. (*Id.*, Exhibit 3). Additionally, both Ridge and Cold Chain had the right to sue for patent infringement. (*Id.*, Exhibit 3). In June 2024, Ridge and Cold Chain executed an addendum to the agreement clarifying their intent to provide Ridge with "all substantial rights

in the Licensed Patent to Licensee." (*Id.*, Exhibit 17). The addendum also amends the agreement to provide Ridge the exclusive right to sue for patent infringement. (*Id.*, Exhibit 17).

Based on Ridge's information and belief, after KNL and Ridge stopped pursuing their joint venture developing a single panel roll-up door, KNL began to develop a single panel roll up door with Altum. ("Defendants' door"). (ECF No. 106 ¶ 41). Altum supplies door panels to KNL and TTPS, who then sends the door panels to Transglobal to add hardware and modifications. (*Id.* ¶ 43, ECF No. 1 ¶ 46). Transglobal then sends the panels back to KNL and TTPS to be sold as single panel roll-up doors. (ECF No. 1 ¶ 46). TTPS's website also advertised that it produces a "patented single panel roll door." (ECF Nos. 106 ¶ 52; ECF No. 106-1, Exhibit 8). The website further stated that the door has a "patented single panel design" and that the door would be "Market-Ready Q3 2023." (ECF Nos. 106 ¶ ¶ 52–57; 106-1, Exhibit 8). The door, however, is not patented. In February 2022, KNL filed U.S. Patent Application 17/676,144 for a patent for a single panel roll-up door ('144 Patent Application). (ECF Nos. 106 ¶ 31; 106-1, Exhibit 4).

In June 2023, Ridge sent a letter requesting KNL add Ridge as a joint inventor on the patent application in recognition of its role in developing the door. (ECF No. 106 ¶ 34). KNL, however, disputed Ridge's contribution to the door. (*Id.* ¶ 35). As a result of discovering claims of a patented single panel roll-up door, in June 2023, Ridge sent cease-and-desist letters to KNL, TPPS, and Altum. (*Id.* ¶¶ 62–68). The letters explained that Ridge is the exclusive licensee of the '084 Patent, claimed the Defendants' single panel roll-up door infringes on the patent, and requested that they cease offering for sale its infringing product. (ECF No. 106-1, Exhibits 9, 12). Ridge also offered KNL and TTPS an opportunity to sublicense its '084 Patent and come to a settlement agreement regarding its infringing product. (*Id.*, Exhibit 9). Separately, (1) KNL and TTPS and (2) Altum responded to Ridge denying infringement.

On September 6, 2023, Mr. Andrew R. Barnes, KNL's patent counsel, sent a letter to Ridge's business partner, Whiting Door Corporation ("Whiting Door"), who helps manufacture Ridge's door, discussing the '144 Patent Application and the possibility of royalty damages for the sale of Ridge's door. (ECF Nos. 106 ¶ 86; 106-1, Exhibit 14). Ridge claims Mr. Barnes "knew that the '144 Patent Application would need to be amended in a manner that would preclude the threatened royalty damages, and further knew that any patent issuing from the '144 Patent Application would be unenforceable due to their failure to correct the inventorship of the '144 Patent Application as required." (ECF No. 106 ¶ 87). On September 11, 2023, Mr. Barnes filed a response to the USPTO amending the subject matter of the claims pending in the '144 Patent Application. (*Id.* ¶ 88; ECF No.106-1 Exhibit 15).

Ridge reports it has expended significant time and resources getting the '084 Patent ready for market. (ECF No.106 ¶ 22). Ridge was in the process of developing its business relationship with Whiting Door which controls approximately 40% of the roll-up door market. (ECF Nos. 31-15 at 7; 150 at 14:1-4).

**A. Procedural History**

On September 20, 2023, Ridge filed its Complaint (ECF No. 1) and its first request for a TRO (ECF No. 2) ("First TRO"). In its Complaint, Ridge alleges: (1) direct patent infringement against KNL, TTPS, and Transglobal; (2) patent inducement against Altum; (3) contributory infringement against Altum; (4) tortious interference with business relationships against KNL, TTPS, and Altum; and (5) false marketing against TTPS and KNL. (ECF No. 1).

After a Rule 65.1 Conference on Ridge's First TRO (ECF No. 25), this Court granted Ridge's Motion, and set a $10,000 bond from Ridge, and scheduled a preliminary injunction ("First PI") hearing (ECF No. 14). Shortly thereafter, Altum sought to add Cold Chain—the owner of the '084

Patent—to this case. (ECF No. 27). Transglobal then questioned whether venue is proper in front of this Court (ECF No. 30), in response to which Ridge voluntarily dismissed Transglobal without prejudice (ECF No. 39).

From October 3, 2023, through October 6, 2023, this Court held the First PI Hearing. This Court granted Ridge's request for a PI and denied Altum's request to join Cold Chain as a necessary party. (ECF No. 77). In so doing, this Court found that while Defendants alleged they will be substantially harmed by the injunction, a PI is nonetheless warranted because Ridge provided sufficient evidence of: (1) a strong likelihood of success on the merits as to all of its claims except a tortious interference claim against Altum; (2) irreparable injury should a PI not issue; and (3) the importance to the public interest in enforcing patent rights. (*Id.* at 12–26). And as a fundamental matter, this Court concluded that, as the exclusive licensee with "all substantial rights" to the '084 Patent, Ridge is able to bring this suit without adding Cold Chain to the litigation. (*Id.* at 27–30).

Defendants disagreed and appealed to the Federal Circuit. (ECF No. 78). Defendants also sought a stay of this Court's imposition of the First TRO (ECF No. 79), which this Court denied for reasons similar to those in its opinion granting Ridge's request for the First PI (ECF No. 78). This Court then held in abeyance Altum's motion to dismiss all claims against it pending the outcome of Defendants' appeal. (ECF Nos. 85, 87).

Since the grant of the First PI, Ridge's first door was installed on a trailer on January 25, 2024, Ridge attended trade shows in February 2024, had its first recorded sale shipped on April 26, 2024, and advertised its door for sale in July 2024. (ECF No. 106 ¶ 76–81).

In August 2024, the Federal Circuit vacated and remanded this Court's denial of joinder and grant of PI relief without reaching the merits of this Court's PI analysis. (ECF No. 94). The Federal

Circuit explained that only a "patentee"—such as an exclusive licensee with "all substantial rights"—can bring a civil suit for patent infringement, but that Ridge is not a "patentee" under its precedent. The appellate court evaluated a host of factors in so deciding—the same factors this Court applied—but emphasized that "[t]he exclusive right to make, use, and sell, as well as the nature and scope of a patentee's retained right to sue … are the most important considerations[.]" (ECF No. 94 at 8) (emphasis added) (citing *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1320 (Fed. Cir. 2021)). The Federal Circuit noted Cold Chain retained not only the right to sue but a right of first refusal and considerable involvement otherwise; thus, the plain text of Cold Chain's licensing agreement made clear that "the [a]greement did not convey all substantial rights in the [relevant] patent to Ridge" so "Ridge is not a "patentee[.]" (Id. at 11).

After Federal Circuit oral argument but before the court's opinion, Plaintiff filed an addendum to its prior agreement with Cold Chain that seeks to "clarify and amend" the prior agreement to crystalize their "inten[t] that the License Agreement provide [Ridge] with all substantial rights" in the relevant patent. (ECF No. 92-1). But the Federal Circuit did not consider this evidence as it "is not properly part of the record on appeal." (ECF No. 94 at 12). The Federal Cicuit went on, however, to explain that "a nunc pro tunc agreement cannot establish Ridge's status as a … patentee[.]" (*Id.* at 12 n.2).

Ridge agreed to add Cold Chain to this litigation by way of an amended complaint, and Cold Chain has since been added as a plaintiff, so this Court denied KNL and TTPS's joinder-related motion to dismiss. (ECF No. 105 (dismissing ECF No. 96 (joinder motion to dismiss) and granting ECF No. 102 (motion for leave to file an amended complaint adding Cold Chain)).

On August 29, 2024, Ridge filed its Amended Complaint that added Cold Chain as a plaintiff. (ECF No. 106). The very next day, Ridge filed motion for a Second PI. (ECF No. 107). On November 18, 2024, this Court granted Ridge's Second PI reasoning that Ridge had established a strong likelihood of success on the merits of its claims. (ECF No. 167 at 10–29). On November 19, 2024, the Defendants appealed. (ECF No. 168). As a result, on March 5, 2025, this Court stayed the case pending resolution of the appeal. (ECF No. 172).

On July 13, 2026, the Federal Circuit again reversed and remanded this Court's grant of the Second PI. (ECF No. 178). This time the Federal Circuit considered the merits of this Court's PI analysis and reasoned that "the district court erred in granting preliminary injunctive relief because the KNL defendants established that, under the proper construction of three separate claim limitations, there is a substantial question regarding whether the Ridge plaintiffs can succeed on the merits of their infringement action." (*Id.* at 8). While Ridge petitioned for panel re-hearing, the Federal Circuit denied the request on August 28, 2026. (ECF No. 179).

On September 4, 2025, the Mandate of the Federal Circuit issued, presenting this Court with a basis to lift the stay in this case. Accordingly, this Court **LIFTS THE STAY in** this case, and will now consider Defendant Altum's Motion to Dismiss (ECF No. 114). This matter is fully briefed and now ripe for this Court's review.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the pleading states "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the Court must construe the pleading in the light most favorable to the non-moving party, accept all well-pleaded factual allegations as true, and draw all reasonable inferences in that party's favor. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation

omitted). The Court, however, is not required to accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" merely because they are presented as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citation omitted).

To survive dismissal, the pleading must contain sufficient factual matter to state a claim that is "plausible on its face," meaning the facts alleged must permit the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citations omitted).

## III. LAW AND ANALYSIS

Defendant Altum seeks to dismiss the entirety of Ridge's claims against them. Altum contends that Ridge has failed sufficiently to state claims for indirect infringement and tortious interference because: (1) Ridge has failed to allege direct infringement; (2) Cold Chain disavowed two key features of the accused patent during prosecution of the '084 Patent; (3) the tortious interference claim is preempted by federal patent law; and (4) Ridge has failed to allege facts that satisfy the elements of a tortious interference claim. This Court addresses each argument in turn below.

### A. Indirect Infringement Claims

Pursuant to 35 U.S.C. § 271(a), a defendant is liable for direct patent infringement when the defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." To state a viable direct patent infringement claim, a plaintiff must: "(i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (citing *Phonometrics, Inc. v. Hosp. Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)). The Patent

Act also prohibits indirect infringement and states that an individual who "actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

There are two types of indirect infringement claims at issue in this case: (1) induced infringement; and (2) contributory infringement. Induced infringement occurs when there has been a predicate direct infringement and a patentee shows "that the alleged infringer possessed the requisite intent to induce infringement, which…requires that the alleged infringer knew or should have known his actions would induce actual infringements." *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1363–64 (Fed. Cir. 2017) (internal citations and quotation marks omitted). Contributory infringement occurs when the alleged infringer "sells, or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, it has no substantial non-infringing uses, and it is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1363 (Fed. Cir. 2017) (quoting 35 U.S.C. § 271(c)).

First, Altum argues that Ridge has failed to allege direct infringement and therefore Ridge has failed to state a claim against Altum for indirect infringement. (ECF No. 114 at 7). Specifically, Altum contends that the Cold Chain Patent calls for an insulated door, but the accused door is not insulated as defined in the Patent. (*Id.*). As such, Altum contends that without alleging that the accused patent is insulating, Ridge has failed to state a direct infringement claim against KNL and therefore does not have a predicate violation to support its indirect infringement claims against Altum. In opposition, Ridge argues that Altum's arguments are premature. In Ridge's view, all that is required at this stage is that Ridge place Altum on notice of what activity is being accused of infringement. (ECF No. 154 at 4). Moreover, Ridge contends that it is not appropriate to resolve

disputes about claim terms on a Rule 12(b)(6) motion. (*Id.*) (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). This Court disagrees.

First, Ridge is not correct that claim construction is always inappropriate at the 12(b)(6) stage. In *UTTO Inc. v. Metrotech Corp.*, the Federal Circuit clarified that "while [s]ome case-specific circumstances can make it improper for a district court to resolve a claim construction dispute in the context of adjudicating a Rule 12(b)(6) motion, …a claim's meaning may be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed." 119 F.4th 984, 994 (Fed. Cir. 2024). The Federal Circuit further reasoned that "where claims are construed based on intrinsic evidence alone, a decision on claim construction is not different in kind from the interpretation of other legal standards, which is proper and routine in ruling on a motion under Rule 12(b)(6)." *Id.* at 993. Thus, this Court is within its authority to resolve a claim construction dispute, if it can do so based on intrinsic evidence. The Supreme Court has specified that intrinsic evidence includes the patent claims, specification, and the patent's prosecution history. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). If the intrinsic evidence does not make the claims plain meaning to be clear, this Court must refrain resolving the disputed claim construction at this stage.

On the other hand, Altum is incorrect to state unequivocally that Ridge has failed to allege that the accused door is insulated. The Amended Complaint specifies that "the accused door includes every feature of the claims in the Cold Chain patent." (ECF No. 106 ¶ 46). Ridge further specifies in the Claim Chart Exhibit that the accused door "is formed from a sheet of foam insulating material attached to a thermoplastic membrane and is therefore an insulated overhead door." (ECF No. 106-1, Exhibit 16). In Ridge's view, alleging that the accused door "is formed from a sheet of foam insulating material" constitutes alleging that the door is "insulated." (ECF

No. 123 at 3). Thus, the more relevant inquiry is whether Ridge's assertion that "a sheet of foam insulating material" constitutes "insulated" as specified in the Cold Chain Patent. Accordingly, this Court now moves onto the claim construction dispute.

Here, the claim construction dispute hinges on the term "insulated." Thus, this Court must assess, using only intrinsic evidence, whether a plain reading of the term "insulated" in context of the patent documents, refers to a door suitable for use with cold storage applications, as Altum contends, or whether "insulated" refers to a door formed from a "sheet of foam insulating material," as Ridge contends.

In Altum's view, the only claim construction of insulating supported by the intrinsic evidence is a high R-value door that is suitable for use in cold storage. (ECF Nos. 114 at 7; 166 at 4–5). Altum further emphasizes that "insulating" is a key feature of the patent as the word is used 82 times in the Patent documents, and accordingly it is the most important feature. (ECF No. 114 at 6). In opposition, Ridge incorporates by reference its argument from the preliminary injunction briefing which contended that "Claim 1 does not require a specific level of insulation… [rather] Claim 1's plain language requires a 'sheet of foam insulating material.'" (ECF No. 123 at 3). Ridge further specified that "[a]ccording to the description in the '084 Patent, a single panel door that has a continuous sheet of foam insulating material as recited in Claim 1—and as present in the Accused Door—is an insulating overhead door as claimed in the Patent." (*Id.* at 4).

This Court first acknowledges that instead of making any claim construction arguments in its motion to dismiss briefing, Ridge merely incorporates by reference its arguments from its preliminary injunction briefing. This practice is disfavored. *See Foley v. Graham*, 2022 WL 1714293 at *1 (9th Cir. May 27, 2022) (stating "We do not consider matters not specifically and distinctly raised and argued in the opening brief. We do not consider arguments incorporated by

reference into the briefs.") (citations omitted). Ridge's failure to make such arguments in response to a dispositive motion is consequential. "The only matters outside the complaint that a court may consider on a motion to dismiss, are public records or those facts whose truth and accuracy cannot reasonably be disputed… A motion for preliminary injunction hardly fits into either of these categories. Such a pleading is nothing but an amalgam of disputed factual allegations and evidentiary showings." *Hynoski v. Columbia County Redevelopment Authority*, 941 F.Supp.2d 547, 556 (M.D. Penn. 2013) (citing Fed. R. Evid. 201(b)). Where a plaintiff has failed to offer detailed argument in support of its position, it is not this Court's job to scour prior briefing to make the arguments on their behalf. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) (reasoning that the defendant's incorporation by reference "invites [the court] to unearth its arguments lodged here and there…, leaving it to [the court] to skip over repetitive material, to recognize and disregard any arguments that are now irrelevant, and to harmonize the arguments in the various documents."); *see also EQT Gathering, LLC v. A Tract of Prop. Situated in Knott Cnty., Ky.*, 970 F. Supp. 2d 655, 661 (E.D. Ky. 2013) (disregarding arguments incorporated by reference and noting that restructuring various arguments into a coherent brief is the job of counsel not the court). Given Ridge does not cite any contrary authority for its ability to incorporate such arguments by reference, this Court need not consider them. Accordingly, this Court finds that dismissal of Ridge's indirect infringement claims to be warranted on this basis alone.

Additionally, while this Court need not consider Ridge's preliminary injunction arguments at all, this Court finds Ridge's offered "claim construction" to be bare at best. In Ridge's preliminary injunction briefing, Ridge primarily argues that Claim 1 of the Patent does not require a certain degree of insulation. (ECF No. 123 at 2–4). In terms of its own claim construction, Ridge instead

contends that the accused door is a "a single panel door that has a continuous sheet of foam insulating material" which constitutes an "insulated" door as claimed in the patent. (*Id.* at 4). Ridge goes on to argue that the specification provides various types of foams but does not require them to any specific level of insulation (*Id.* at 3). It further contends that "varying levels low to high insulation is but one of many advantages" of the doors covered under the patent. (*Id.* at 4). Notably devoid from Ridge's preliminary injunction briefing, however, is any acknowledgment of the repeated references to "high R-value" and "cold storage" in the specification.

In its motion to dismiss briefing, Altum does offer support for its construction arguing that the entire background section of the specification discusses how the Cold Chain Door has greater insulating properties than other doors used in the cold storage industry. (ECF No. 114 at 7). Altum Further argues that the specification repeatedly equates insulating with R-value. (ECF No. 166 at 3).

After analyzing the intrinsic evidence, this Court reasons that a clear reading of the specification demonstrates that "insulated overhead door" specifically refers to a door used in cold storage. The patent specification notes that "[t]he present disclosure addresses some of the current problems with existing overhead door technology, and in particular, **the problems associated with insulated doors used in the cold storage industry,** such as on delivery trucks for cold storage distribution." (ECF No. 106-1, Exhibit 1) (emphasis added). The specification further states that the inventors sought to produce a flexible door that would open and close in closed tracks allowing for a "**higher R-value for insulation [and] reduced heat intrusion into a cooled space**…." (*Id.*) (emphasis added). Accordingly, this Court finds that the specification makes plain that the Patent sought to address a temperature problem. And logically, such would require the door to have a quality that is able to regulate temperature in some manner.

The Federal Cicuit specified in *UTTO*, that courts should "generally give words of a claim their ordinary meaning in the context of the claim and the whole patent document; [and] the specification particularly…." 119 F.4th at 995. Here, in the context of the specification, it is undeniable that "insulated" refers to a door that has the ability to be used in cold storage. Conversely, Ridge's contention that "insulated" merely equates to a door formed from sheet of foam does not make sense in light of the fact that the specification provides that the temperature regulating capabilities of the door matters. Specifically, if this Court were to give "insulated" Ridge's simplistic construction of having "a sheet of foam insulating material" without any requirement that the foam have the capabilities for use in cold storage, such reading would not make sense in the context of the specification. In fact, this Court reasons that such an interpretation would be so contrary to the plain meaning of the term in context of the specification, that the term would require a disclaimer. *Minotaur Sys. LLC v. Trimble Inc.*, 2025 WL 3242529, at *6 (D. Colo. Aug. 1, 2025). Further, while not dispositive here, the Federal Circuit's July 13, 2026, Opinion discussing this Court's grant of the second preliminary injunction is instructive. The Federal Circuit reasoned that the specification of the '084 patent strongly suggests that an "insulated overhead door" is a door that is suitable for use in cold storage applications.[1] (ECF No. 178 at 12).

In light of this evidence, this Court does not find support for Ridge's bare assertion that insulating means containing a "continuous sheet of foam." And notably, Ridge offers no argument explaining that additional proceedings could matter to the result of the claim construction. *Cf. UTTO*, 119 F.4th at 995 (highlighting that the plaintiff indicated that its intent to present additional

[1] The Federal Circuit made this conclusion based on the intrinsic evidence in the specification alone. (ECF No. 178 at 12–13). The Federal Circuit did, however, acknowledge that certain extrinsic evidence provided further support for this finding, but this Court does not consider any of the Federal Circuit's reasoning regarding extrinsic evidence as it is inappropriate at the motion to dismiss stage. Additionally, this Court recognizes that the Federal Circuit examined the likelihood of success on the merits which is different than the standard required at the motion to dismiss stage. Accordingly, this Court notes that its conclusions do not and cannot rest on the Federal Circuit's conclusions.

claim construction analysis and pointed to pieces of extrinsic evidence it sought to use if given the opportunity, in a case where fuller claim construction was warranted).

Accordingly, this Court finds that the claim requirement of "insulated" as established in the specification refers to is a door that is suitable for use in cold storage applications. Tellingly, Ridge does not allege that the accused door is suitable for use in cold storage applications; instead, Ridge contends that having a sheet of continuous foam is sufficient to constitute insulated. Where the pleadings must do more than simply reiterate the claim language, such is not sufficient to allege that the accused door is insulated. *Loyal-T Sys. LLC v. Am. Express Co.*, 800 F. Supp. 3d 580, 587 (S.D.N.Y. 2025) (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352–53 (Fed. Cir. 2021) ("While a plaintiff need not prove its case at the pleading, 'a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."). Consequently, because Ridge has failed to allege that the accused door is an "insulated" door as defined in the Patent, there can be no direct infringement to serve as the predicate violation for Ridge's indirect infringement claims against Altum. Ridge's indirect infringement claims are hereby **DISMISSED**[2].

### B. Tortious Interference

Finally, this Court analyzes Ridge's tortious interference claim. Altum argues that Ridge's state-law claim is preempted and that Ridge fails to state a claim for tortious interference. (ECF

[2] This Court does not reach Altum's arguments regarding the additional features that Cold Chain patent allegedly disavowed. Ridge does not explicitly address such arguments in its opposition motion, and instead, incorporates by reference arguments made in its preliminary injunction briefing. (ECF No. 154 at 6 n.2). For the reasons stated above, however, this Court need not consider the arguments not raised in this briefing. *See supra* Section III.A. Additionally, this Court has already determined that the indirect infringement claims fail due to Ridge's failure to allege that the accused door is insulated as defined in the Patent. (*Id.*).

No. 114 at 13–16). According to *Dow Chem. Co. v. Exxon Corp.*, state tort law claims are "not preempted by the federal patent law, even if it requires the state court to adjudicate a question of federal patent law, provided the state law cause of action includes additional elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." 139 F.3d 1470, 1473 (Fed. Cir. 1998).

To state a claim for tortious interference with a business relationship, a plaintiff must allege: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Horter Inv. Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 923 (S.D. Ohio 2017) (quoting *Ginn v. Stonecreek Dental Care*, 30 N.E.3d 1034, 1039 (Ohio Ct. App. 12 Dist. 2015)). Thus, because the indirect infringement claims alleged by Ridge do not require the existence of a business relationship or damages, Ridge's state law claim is not preempted because it requires additional elements not found in federal patent law. *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 359 (D. Del. 2006) ("[T]he tortious interference claims, even though they are based in part on Cryovac's assertion that Pechiney willfully infringed claim 11 of the '419 patent, require Cryovac to prove a number of things in addition to willful infringement, including the existence of a contract or a valid business relationship or expectancy and the knowledge Pechiney allegedly had of the contract or the relationship.… Therefore, Cryovac's tortious **interference** claim is not preempted by patent law"). Additionally, where a state tort law claim is brought in conjunction with and not in opposition to patent claims, the state claims are not preempted. (*Id.*). Thus, Altum is not correct that such claims are preempted.

Although Ridge's claims are not preempted, Ridge's tortious interference claims fail because Ridge has failed to state the elements of the claim. Ridge contends that it has identified

one business relationship that Altum disrupted—Ridge's relationship with KNL Defendants. (ECF No. 154 at 8). A simple look at the Amended Complaint, however, dispels Ridges's assertions.

It is undisputed that the Amended Complaint alleges the existence of a business relationship between KNL and Altum. (ECF No. 106 ¶¶ 82, 119). Ridge also alleges that Altum was aware of the relationship between KNL and Altum. (*Id.* ¶¶82, 84). Ridge's allegations further supporting the knowledge element by contending that many of the Altum employees formerly worked for Ridge and therefore were aware of the long-term relationship.(*Id.* ¶84). Ridge fails, however, to allege an intentional interference by Altum that caused a breach or termination of the business relationship between KNL and Ridge. Ridge alleges that "**after** the failed joint inventorship, **KNL decided** to compete with Ridge and elicited the help of Altum."(*Id.* ¶83)(emphasis added). This allegation is detrimental for Ridge. Ridge alleges that KNL **decided** to elicit the help of Altum ***after*** the failed joint inventorship, which indicates that Altum could not have caused the termination of the relationship. Without any allegations that Altum's interference caused the termination of the relationship, Ridge has failed to state a claim. And although Ridge more broadly alleged that Altum has interfered with "Ridge's business relationships" (*Id.* ¶¶ 85, 120), there is no specific mention of any other with which Altum has allegedly interfered. Accordingly, Ridge's tortious interference claim against Altum must be **DISMISSED**.

## IV. CONCLUSION

For the reasons stated above, Altum's' Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 30, 2026**